# Wytheville.

## N. & W. RAILROAD CO. v. WYSOR.

### JULY 8th, 1886.

1. PRACTICE AT COMMON LAW—*Action ex contractu—Declaration—Demurrer.*—Declaration showing on its face that plaintiff had first violated the contract is bad on demurrer.

2. IDEM—*Misjoinder of counts—Consequences.*—Counts *ex delicto* cannot be joined in the same declaration with counts *ex contractu.* Such misjoinder makes the declaration bad on demurrer. But *unless a demurrer has been filed and overruled,* such misjoinder will not be grounds for motion in arrest of judgment or writ of error. Code 1873, ch. 177, sec. 3.

3. IDEM—*Passengers—Rules and regulations.*—Carrier is entitled to make rules for conducting its affairs, if they be reasonable, not conflicting with any legal liability, and not exempting from liability for negligence or improper conduct. If those rules be such, they are binding on persons dealing with carrier when notified thereof. The reasonableness of these rules is a question of law for the courts.

4. COMMUTATION TICKETS—*Detached coupons.*—The rule that coupons of such tickets, *if detached,* will not be accepted for a passage, is reasonable.

5. INSTRUCTIONS—*Damages—Punitive and excessive—Case at bar.*—The instruction asked for by the defendant company was proper, and should have been given; and the court below erred in substituting for it the instruction given of its own motion. The verdict was for punitive and excessive damages, and should have been set aside. Punitive damages belong alone to actions of *tort.*

Error to judgment of circuit court of Wythe county, rendered November 26th, 1885, in an action wherein H. C. Wysor was plaintiff and the Norfolk and Western Railroad Company

was defendant. Verdict was for plaintiff for $550 damages. On divers points, saved at the trial, the defendant company obtained a writ of error and *supersedeas.*

Opinion states the case.

*W. H. Bolling,* for the plaintiff in error.

*James A. Walker* and *Ro. Crockett,* for the defendant in error.

1st. The demurrer was properly overruled. There are three counts in the declaration. The demurrer is a general demurrer, and if either count is good the demurrer cannot be sustained. *Hollingsworth* v. *Milton,* 8 Leigh, 50; *Henderson* v. *Stringer,* 6 Gratt. 133; 4 Minor, 485; *Smith* v. *Floyd,* 16 Gratt. 309.

The third count is liable to none of the objections urged to the declaration, and is unquestionably good; but all the counts are good, since there is "no defect or imperfection in them and nothing omitted so essential to the action, that judgment, according to law and the very right of the case, cannot be given." Code 1873, ch. 167, sec. 12.

*There was no misjoinder of counts.* Code 1873, ch. 145, sec. 6, provides that in any case where an action of trespass will lie, there may be maintained an action of trespass on the case— that is, counts in trespass may be joined to counts in case, in an action in the case. 5 Barton's Pr. 185; *Parsons* v. *Harper,* 16 Gratt. 742; 1 Chitty Pl. 231; 4 Minor, 366.

II. There is no error in the instruction given by the court. The instruction contains two propositions only, viz: 1st. That a *substantial* compliance with the conditions on which the ticket was issued to the holder was sufficient. 2d. That it was a substantial compliance with the condition, "coupons not good for passage if detached," if the rightful holder of the ticket tore off the proper number of coupons in the presence

and sight of the conductor, and presented them along with the ticket to the conductor for his examination and verification. The first branch of this instruction is not objectionable, since the law is always satisfied with a substantial compliance with a contract, unless it involves a forfeiture or a penalty. The second branch of the instruction is clearly right if the first is. It is not denied that the facts assumed show a substantial compliance with the condition. But if it were true that a literal compliance with the condition, "coupons not good for passage if *detached*," was required, it was a literal compliance to tear them off in the presence and sight of the conductor, &c. The mere tearing off the coupon is not detaching it. The word *detach* means more than a mere physical severance of the parts of a whole. It means to disunite the parts and then to separate them. The word detach is a compound word, meaning to *thrust* or *send* away. To detach the coupons from a ticket means to thrust or send them away from the ticket. The mere tearing them from the ticket, without separating them from the ticket, was not detaching them. Nor was there error in the rule laid down by the court to guide the jury in assessing damages. In every case where a carrier wrongfully ejects a passenger from its coaches, it is in violation of an express contract, and it matters not that the passenger in this case was travelling on a 2,500 mile ticket. The wrongful eviction is governed by the same rule as to damages in all cases. The damages in such cases have never been held to be merely compensatory. The actual pecuniary loss may not be one dollar, and the special damage for breach of the contract may only be the loss of a pleasure trip. Such a rule of compensation would be a mockery. The rule laid down by the court in this case was very liberal to the railroad. It instructs the jury that the defendant is "liable for damages, to be estimated according to the time, place and circumstances attending the

eviction, and the inconvenience and special damages sustained by the party evicted. Nor does it alter the case that the passenger left the train when ordered to leave by the conductor without waiting to be rudely assaulted by the employees of the defendant. In no case can a passenger be expected to make physical resistance to the agents and officers of the company, and to wait until he is dragged forcibly from the cars.

III. The court did not err in refusing the instruction asked for by the defendant. These instructions assert a high prerogative on behalf of railroad companies, which is not possessed by other people. The first asserts the doctrine that a passenger cannot insist upon a just and proper construction of his rights, but must abandon his contract, and accept such an one in its stead as the "head of the department" may graciously consent to give him by *his* construction of the agreement in dispute. The second asserts a similar doctrine, viz: that the plaintiff had no right to enter the train relying upon the true meaning of his contract and assert his right to ride on the coaches of defendant, if the defendant objected thereto. The third instruction insists on the same doctrine as the 1st and 2d, viz: that if the defendants evicted the plaintiff under a mistaken view of the contract *and of the* rights of the plaintiff, they are not liable for more than actual damages. It seeks to make the passenger responsible for the mistakes of the railroad officials. The construction of this contract had been a matter of dispute, previously between the plaintiff and the conductor, and the "head of the department" had persisted in his error, and in the instructions to eject the plaintiff. For such willful and persistent continuance in error the defendant is liable for more than actual damages. The whole theory of these instructions is to set the "heads of departments" above the courts and to make their construction of the contracts of the company a law, not only to their employees and agents, but for the public.

IV. The damages are not excessive. The defendants willfully and persistently violated their contract with the plaintiff, and by the exercise of their arbitrary and unlimited power over their trains and passengers they ejected a passenger who had paid his fare and was properly on their coaches. Such an act is harsh, oppressive, arbitrary, and offers indignity and insult for which the damages assessed in this case are reasonable.

FAUNTLEROY, J., delivered the opinion of the court.

This suit is a common law action of trespass on the case for damages for the alleged violation by the defendant company of its special contract with the plaintiff, embodied in the terms and conditions of what is called a "commutation ticket," and entitled on its face: "No. 161. Norfolk and Western Railroad Company. 2,500 mile ticket. Form C. Good over the Norfolk and Western railroad, and all divisions, and Shenandoah Valley railroad." There was a general demurrer to the declaration, which was overruled by the court. The declaration sets out a special contract, made by the plaintiff with the defendant for the transportation of the plaintiff over the roads of the defendant at a rate greatly less than the regular passenger fare. To show his rights as a passenger, and the defendant's duties to him as such, the plaintiff sets out in his declaration the special contract of carriage as contained in his said commutation ticket. This said contract contains and expresses certain conditions and stipulations, with the reservation of distinct rights to the company, which the plaintiff accepted by a writing signed by him "in consideration of the reduced rates at which the ticket was sold to him." These said conditions and stipulations, thus distinctly set out in the contract itself, are fully and particularly explained in the

"*instructions to conductors,*" which are printed in the ticket, and to which the attention of the plaintiff was specially called before he signed and accepted the contract of which they are part and parcel, and which, when read, admit of no doubt or question as to what was the intent of the parties when the contract was entered into as to the mode in which it was to be performed.

To entitle the plaintiff to recover in this action for an alleged violation of this contract, he must aver in his declaration, and prove that he had faithfully performed his part of the contract, or was willing and ready to perform it, but was prevented by the failure or inability of the railroad company to perform it on their part.

The declaration nowhere alleges, avers, or pretends that the plaintiff had complied with the terms of the contract and performed what was required of him; but the averments of his declaration show that he had willfully and deliberately violated both the letter and spirit of the contract, and had assumed such an attitude towards the defendant railroad company and its servants, as to prevent entirely the performance of the contract between him and the company, as it was intended and agreed. The contract is entire, and it must be construed as a whole. To strike out the conditions and stipulations which constitute the consideration or inducement to the company to enter into the special contract to carry the plaintiff at a reduced rate—only a little more than one-half of their regular fare— would be to destroy the contract and deprive it of its character as a special contract differing from that implied in the regular tickets sold by the company, and which the law makes in favor of every passenger who gets upon the train and pays his full passenger fare. For the foregoing reasons the demurrer to the declaration should have been sustained. But the decla-

ration is demurrable on the ground of a *misjoinder of actions.* The first and second counts are *ex contractu*, the third and last count is *ex delicto*—for a violent, willful, and malicious assault and battery. "Actions *in tort* cannot be joined with causes arising *out of contract.*" 4 Minor's Inst. 366.

"The consequences of a misjoinder of counts or causes of action are more material than in case of a single count being defective; for, in the case of a misjoinder, however perfect the counts may respectively be in themselves, the declaration will be bad on *general demurrer*, but not (under our statute of *jeofails*—Code 1873, chapter 177, section 3) on motion in arrest of judgment or writ or error, *unless a demurrer had been put in and overruled.*" 1 Chitty's Pleadings, page 236; 4 Minor's Inst., page 367; *Womack* v. *Circle*, 29 Gratt. 196.

The counsel for the plaintiff in error waived the demurrer, and requested this court to decide this case upon the facts in the record and the law applicable to the facts. It appears from the evidence that H. C. Wysor, the defendant in error, who is the plaintiff in this suit, on the 30th day of June, 1884, got upon the train of the defendant company at Dublin, in Pulaski county, to go to Central depot, a distance of eight miles; that he was the owner of a twenty-five-hundred-mile commutation ticket or book, issued to him by the said company, numbered 161, containing the following "*conditions*": "Only the two persons named in this contract are entitled to use the coupons herein. It entitles the authorized holder to travel to the extent of the miles indicated on the regular passenger trains, provided always, that he enters or leaves said trains at the regular stations of the company, as appears in its published schedules, at points at which it takes or leaves other passengers. The usual amount of locked personal baggage, &c. * * *Coupons not good for passage if detached.* In

consideration of the reduced rates at which this ticket is sold [we] hereby accept the above conditions.

[Signed] "Henry C. Wysor,

"S. Baskerville."

This commutation ticket or book has, conspicuously, "*Instructions to Conductors.*" *First.*—Conductors will detach coupons to cover number of miles passenger travels, and return same to auditor, together with other collections. *Second.*—Coupons from this book *must not* under any circumstances *be accepted for passage if detached.* *Third.*—Take up and return the cover of this book as soon as all, the coupons are detached. *Fourth.*—This ticket must not be honored unless it bears the stamp of office issuing the same.

[Signed] A. Pope,

*General Passenger and Ticket Agent.*

Said ticket had coupons attached, so that the exact number of miles the passenger desired to travel could be readily detached. The said H. C. Wysor, the plaintiff, ordered the ticket through the defendant company's station agent at Dublin, from the general passenger and ticket agent of the company at Roanoke, Va.; who, as he knew, could only issue them, and who only could issue orders and instructions to the conductors for the regulation and running of the trains. And when he received the ticket or book he read the "instructions to conductors" on the inside of the said ticket to which his attention was particularly called, and he then read and signed the contract on the inside of the front cover of said ticket, and paid the said agent the fifty dollars and took the book. On the said 30th day of June, 1884, when the conductor of the train of defendant company, one Cabell Childress, came into the car, soon after the train got in motion from Dublin going east, he saw the plaintiff, Wysor, in

the car, and as he approached him to collect his fare he saw him in the act of detaching the coupons from his commutation ticket. He at once extended his hand towards the plaintiff, saying: "Stop; don't do that. I—I can't take the coupons if you tear them out." The plaintiff disregarded this remonstrance, and tendered to the said conductor four coupons, which he had detached from his ticket, representing eight miles of travel, or twenty cents, saying to the conductor that he could have the ticket or book to identify the coupons, but that he must not tear his book. The conductor refused to take the coupons thus tendered to him, and told the plaintiff that unless he would let him have the book to detach coupons himself for the number of miles plaintiff intended to travel he would be obliged to put him off; that it was his duty, under the express orders and regulations of the company, to detach the coupons himself. The plaintiff then said: "You will have to put me off; stop your train." The conductor thereupon did stop the train and told the plaintiff to get off. He (the plaintiff) got up and walked out of the car and off the train about one-half mile from the station at which he got on. The plaintiff, Wysor, had some time before that detached his coupons from his ticket while a passenger upon Childress's train, and tendered them to the said Childress, conductor, for his fare, who at first refused to receive them, but did accept them, and carried the said Wysor to his destination. On that occasion Childress called the attention of Wysor to his contract with the company, as contained in his ticket, and the instructions to the conductors, to which the said Wysor replied: "You have on two occasions torn out of my book too much, and I don't intend for you to tear it again. I shall continue to tear out my coupons. This is my book; I bought it, and paid my money for it, and I have a right to do with it as I please." To this the said conductor replied that he (Childress)

was bound to obey faithfully and strictly the rules and regulations of the company; that if the plaintiff did that with him again he would not receive the coupons, and would put him off his train. The said Wysor had had trouble with other conductors on defendant's road about the same matter, and had been put off the trains by two other conductors, and he had brought three suits against the company for it. The plaintiff, Wysor, stated in his evidence that when Childress and the other conductors had their attention called to the fact that they had detached too many coupons from his ticket they promptly corrected the mistake, and handed back to him the excess.

Upon this evidence the plaintiff instituted this action, as set forth in the declaration, upon his contract, which he introduced in evidence and relied on before the jury to recover damages from the company. The circuit court refused to give the instructions asked for by the defendant, except the fourth, as follows: "The court instructs the jury that if the plaintiff first deliberately violated his contract with the defendant, he is not entitled to recover, provided no unnecessary force was used to eject him." And then the court, of its own motion, instructed the jury as follows: "The court instructs the jury: The commutation tickets, as are described by the evidence in this cause, being sold by the railroad company at reduced rates under contract, the holder thereof should substantially, in using them, comply with the contract, and in this case a substantial compliance with the contract required that the coupons should be detached either by the conductor of the train to whom presented, or the same be done in his presence and sight, and when so done the book or ticket should be presented for examination and identification along with the coupons; and if the evidence shows that the plaintiff detached the coupons, or any of them, without the presence of the conductor, and did

so intentionally to prevent the conductor of the train from detaching them, the conductor had a right to refuse to receive the coupons so detached and presented, and to demand payment of fare before carrying the passenger further, and to eject him if he refused to pay, provided without using unnecessary force. But if the evidence shows, on the contrary, that the coupons were wholly detached in the presence of the conductor, and were presented along with the book or ticket for examination and identification, then it was the duty of the conductor to receive the coupons and carry the passenger to his destination; and to eject him under such circumstances, renders the railroad company liable for damages, to be estimated according to the time, place and circumstances attending the eviction and the inconveniences and special damages sustained by the party evicted."

Under these instructions the jury found a verdict for the plaintiff for $550 damages, which verdict the court refused to set aside on motion of the defendant, and the court entered judgment upon the said verdict for the said damages and costs against the defendant company. We are of opinion that the verdict of the jury is contrary to the law and the evidence in the case, and that the circuit court erred in refusing to set it aside, on the motion of the defendant, and in refusing to grant a new trial, and also in giving the instruction which was given by the court to the jury, of its own motion, instead of the instructions asked for by the defendant.

It is well-settled law that a carrier has a right to make reasonable rules and regulations for the conduct of its affairs, and that they are binding upon the passengers and the public dealing with the carrier when brought to their notice; provided, always, that these conditions and regulations and instructions are kept within the rule which prohibits, upon principles of public policy, certain conditions or contracts to be made

exempting carriers from liability for negligence, or for failure to comply with obligations or duties to the public imposed by law. Rorer on Railroads, p. 979–80 and 985; 1 Am. and Eng. R. R. Cases, p. 253; *Western Union Telegraph Company* v. *Reynolds Brothers*, 77 Va. (2 Hansbrough), 173.

The reasonableness of the rules and regulations of a railroad company is a question of law addressed to the courts. The regulations and rules of the defendant company as contained in "instructions to conductors" are reasonable and do not interfere with or infringe any rights of the plaintiff belonging to him in common with others, to be carried safely, peaceably, and comfortably, and with convenient dispatch over the company's roads. It was the clear, explicit, and expressed intention and agreement of the plaintiff and defendant, at the time the contract of carriage was entered into, that the conductor should detach the coupons for the number of miles the plaintiff informed him he intended to travel, and the conditions and stipulations of the special contract of carriage— "coupons not good for passage if detached"; "conductors will detach coupons," &c.; "coupons from this book must not, under any circumstances, be accepted for passage *if detached*"—were made to prevent imposition and fraud upon the company, and as a reasonable and necessary instruction of the railroad company to its conductors as to what shall be evidence to them of the right of the holder of the commutation ticket to be a passenger upon its trains, and to enjoy the rights and privileges of a passenger at the reduced rate of fare; and the plaintiff expressly agreed to present the book or ticket to the conductor as a whole, so that he could comply faithfully and obediently with the orders of his superiors; and it was a plain violation of his contract for the plaintiff to detach the coupon and to demand that the conductor should receive it in a mutilated form. The plaintiff says that he knew all about these

rules and regulations, and read them before he signed the contract; and without this condition, that the conductor should detach the coupons, and not the holder of the ticket or book, the company would not have made the contract with the plaintiff. If he had insisted, or even intimated, before the ticket was delivered to him, that this condition or rule should be expunged, or he would not sign the contract, then he could not have purchased the ticket. Mr. Pope, the general passenger and ticket agent, would have then refused to sell him the ticket, and he would have been compelled to buy the regular tickets at the full rate of first-class passenger fare. The company would have had the absolute right to refuse to sell the plaintiff this commutation ticket if he had insisted upon the right, as he now does, to detach the coupons; and there is no power to compel the company to sell these tickets at a reduced rate, except upon such terms and conditions as they choose to make with the buyers of them. The railroad company has the right to make these reasonable conditions, and the violation of any of these conditions forfeits the right of the holder of the ticket to be carried as a passenger upon the terms of the ticket, and he may be expelled from the train by the conductor without any liability for damages upon the company, provided that no unnecessary force be used. The plaintiff in this case contracted with express reference to and recognition of this necessary and reasonable rule of the company, for the direction of the conductors, to prevent fraud, deceit, and imposition; and the plaintiff had no right to contend and squabble with the conductor about a construction of his contract, and to insist that the conductor should violate the express orders of his superiors in office and put himself in the attitude of disobedience, and to demand that he should stop the train and expel him, to the annoyance, delay, and discomfort of the other passengers, with the direct and sinister

Opinion.

design of suing the company, and, under the guise of law and aid of the courts, to mulct them in a verdict for damages.

The verdict of the jury is for excessive, punitive, and exemplary damages, and it should have been set aside by the court. Such damages belong alone to actions of *tort*, and there is no evidence of a willful and malicious purpose or intent by the company, or its servants, to wrong or injure the plaintiff, or of any neglect of duty to the public, or of negligence or indifference; but, on the contrary, the evidence is full and conclusive that the plaintiff got upon the defendant's train, expecting to be expelled, and so conducted himself as to compel his expulsion from the train, with a view of suing the company for a wrongful expulsion, with the systematic and persistent design of making money by his self-sought and self-inflicted martyrdom. He must take nothing by his false clamor. Enlightened policy, as well as a sound and impartial administration of justice, will, while railroad companies as carriers are held to a strict performance of all their difficult and dangerous duties under the law, shield them from excessive and oppressive verdicts where they are not in fault.

The verdict of the jury in this case must be set aside, the plaintiff's declaration be quashed, and the judgment of the circuit court be reversed and annulled, with costs in favor of the plaintiff in error.

Judgment reversed.