In re LANDBANK EQUITY
CORPORATION, Debtor.

Laurence H. LEVY, Trustee, Plaintiff,

v.

William Robert RUNNELLS, Jr., Marika Lody Runnells, a/k/a Marika Lahti Runnells, John Edward Runnells, Thomas Ebmeier, Kimberly Runnells Ebmeier, Stephen Z. Runnells, Robert D. Runnells, Lucille Runnells, Property Buyers, Incorporated, Runnington Investment Corporation, John Edward Properties, Inc., William Robert & Company, Kimberly & Company, Lody & Company, Mortgage Express, Inc., Richmond Equity Corporation, Sovran Financial Corporation of Virginia, Statewide Mortgages, Inc., Prime Financial Corporation, General Mortgage Corporation, Butler, Payne & Griffin, Thalia Meadows Holding Corporation, Property Holding Corporation, Runnington Holding Corporation, Defendants.

Bankruptcy No. 85–01541–N.
Adv. No. 86–0727–N.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Nov. 6, 1986.

David H. Adams, Louis N. Joynes, II, of Taylor, Walker & Adams, Norfolk, Va., for plaintiff.

Barry R. Koch, Edward T. Caton, of Caton & Koch, P.C., Virginia Beach, Va., for defendants.

Tom C. Smith, Virginia Beach, Va., for John Edward Runnells and John Edward Properties, Inc.

## EXHAUSTIVE OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

### Prologue

As with any word, it can be misapplied for the occasion, but the word *saga* seems to have salient application here. John Galsworthy spoke of *The Forsythe Saga,* M.R. Ridley of the Vikings, and McCarten even thought the story of the pilot who dropped the atomic bomb a saga.

The canvas upon which Landbank Equity Corporation splashed was unbelievably enormous laying upon it a once successful business, a family, a covey of investors and a flock of sheep.

Even when it is only faintly realizable, many seek fulfillment of the American dream, "my own home." That it is not more easily attainable is the subject for our consideration in our class on Learning for Life and not here. For those who wade the depths of homeownership, often a first mortgage is inadequate and these dreamers fall into the temptation of extending themselves into a second mortgage. In the marketplace, then, taking it as we find it, there is a need for honest money changers, those who make a second loan possible.

Landbank served that function, in the finality abysmally, yet it would be unjust to characterize all borrowers as tragedy-ridden; indeed, many, perhaps a majority, rolled the dice twice and paid the piper successfully. And that's what Landbank was—a highly successful second mortgage business. It made huge profits prior to the Gothic god of greed being enthroned at Landbank.

Something happened—an understatement—and that 'something' is much a part of this seership. Acting as the servicing agent for many investor firms who were into Landbank, it [Landbank] was making the second mortgage loans, was collecting the monthly dues from the borrowers, but was not always remitting the coin to the investors. Indeed, during the last month of its operation, Landbank became a dead end and did not pass on approximately $9.5 million collected. A hole in the sewer opened and a Runnells' ransom vanished. The reply is always that it went for operating expenses. We do not here consider the good or the bad, the right or the wrong, of Landbank's relationship with the borrowers. That course of dealing is another's present danger.

So, something happened. Landbank was unable to keep the perpetual motion machine going and on September 17, 1985, filed a voluntary Chapter 11 bankruptcy petition, but this was but a gesture and was quickly followed in seven days by a

conversion to a case under Chapter 7 (straight bankruptcy).

The United States Trustee, pursuant to his power and duty under 11 U.S.C. § 15701, appointed Laurence H. Levy as Interim Trustee, later, by operation of law, to become full trustee. After months of investigation, the trustee filed this action seeking to recover from relatives and entities related to Landbank funds the trustee believes went to them illegally.

Following discovery and disposition of preliminary motions a plenty, this matter went to trial, a lengthy one, n'est pas?

### The Case

The trustee's star witness was Keith L. Davis, C.P.A., of KMG Main Kurdman, a prominent international investigative accounting firm employed by the trustee to undertake a thorough and exhaustive inquiry into the affairs of Anatol. This is the foundation upon which the trustee seeks to build his case and the evidence supports the conclusion that a thorough and exhaustive inquiry *was* made. As many as fifteen persons were involved and 2,900 hours expended.

Obviously, the quality of the inquiry is put at issue by the defendants, but the accountants make their case and while the degree of proof does not change, the burden certainly shifted to the defendants to explain what happened.

With such an obviously large potential fee involved for such extensive work, counsel for the defendants asked Davis if he was biased, favored his employer. No, Davis replied, he was impartial and had, in fact, advised the trustee to abandon pursuit in some areas.

Let it be said now and repeated later, as it is paramount, the Court has heard and observed the witnesses and weighed their demeanor, their credibility. All factual conclusions and the weight to be given their testimony are on that fateful but not isolated scale.

Further, two cardinal premises prevailed and ran without interruption underneath and throughout the trial and, of course, bear upon the Court's decision. Almost every piece of evidence relates to them.

*I. The accountants concluded that*

*(a) The books and records are in a state of gross disarray;*

*(b) The books and records reflect a complete lack of internal control; and*

*(c) As a result, their accuracy is very much in question.*[1]

*II. In chief, the trustee has built his case upon the defendants' own records.*

Further, as threads throughout the saga of each defendant and conclusions of fact, there are basic badges of fraud which relate to the elements alleged by the trustee: fraud, preferences, fraudulent conveyances, and phony corporate veils:

(1) The accountants found more than ninety (90) names of other entities (partnerships, corporations, companies and individuals) between and among which the assets of Landbank were passed. Imagine, ninety.

(2) The accountants concluded that considerable property was placed in the names of strawmen to deceive and conceal problems.

(3) Funds were transferred constantly, as for example, between Property Buyers, Inc. and Landbank.

(4) Millions of dollars of property has vanished. For instance, once Landbank had sixty automobiles, but at bankruptcy had but one.

(5) Insiders' were constantly favored, particularly through loans and no charge for "points" in transactions, while the public paid as high as forty points for a loan.

(6) Financial statements never reflected loan loss write offs; foreclosure loan losses were hidden in the Property Buyers entity.

---

1. Of course, a check drawn is a check drawn; money spent is money spent. Lack of accuracy indicates a complete picture of the financial story is not available.

(7) Loans were constantly made to insiders in spite of a written December 3, 1980, company policy prohibiting this.

(8) Open access to the drawing of checks existed on a higher level.

(9) Appraisals were signed in blank or were not actually made at all.

Prior to considering each defendant one by one, we must stand back and ask "Do separate and individual entities arise or does it *all* blend into a single entity, one blended landscape without restraints?" Legally, is all the *alter ego* of Landbank? While the nine elements above speak to many issues, they speak clearly to this particular one as well.

The Court of Appeals for the Fourth Circuit cites itself frequently on the issue of piercing the corporate veil always referring back to *DeWitt Truck Brokers, Inc. v. Flemming Fruit Company*, 540 F.2d 681 (4th Cir.1976). Judge Russell listed the visible signs:

| DeWitt | Landbank Examples |
|---|---|
| (1) inadequate capital | (1) all was dependent on cash flow; nothing was properly capitalized |
| (2) failure to observe corporate formalities | (2) loans flowed back and forth; a resolution prohibiting loans to insiders was ignored |
| (3) non-payment of dividends | (3) the principals took what they wanted |
| (4) the insolvency at the time | (4) insolvent as of August 31, 1983 |
| (5) the siphoning of funds by dominant stockholders | (5) that's what this is all about; a regular course of dealing |
| (6) non-functioning of other officers | (6) all did function here |
| (7) absence of corporate records | (7) a deplorable and impossible situation |
| (8) the corporation merely a facade | (8) the principals did what they wished |

No entity generated funds itself. The source was always Landbank.

Ninety entities. What was the purpose? Solely to manipulate and conceal. We have here but one jar.

A further test of *DeWitt* is that there must be present an element of injustice or fundamental unfairness. In this regard, the bodies are everywhere. Millions missing, millions which belonged to others. No one can conclude this was an honest operation.

### The Defendants

The masthead to this epitome is lengthy, but for our purposes here the defendants are fewer, others not having defended and, consequently, are in default. We consider those who strongly dispute the trustee's allegations.

### MARIKA LODY RUNNELLS

The trustee, seeks from Mrs. Runnells

| | |
|---|---|
| —Loans due | $484,755.74 |
| —Preferences | 70,360.00 |
| —"Points" not paid | 68,786.00 |
| —Indebtedness to Kimberly & Company | 361,477.00 |
| —Mortgage Express, Inc. | 524,135.64 |
| —Richmond Equity Corporation | 865,665.00 |
| —Runnington Investment Corporation | 806,045.00 |
| —Dealings with Property Buyers, Inc. | 2,124,928.00 |
| —Dealings with Lody & Company | 157,252.88 |
| | $ 5,463.405.26 |
| Punitive damages | $16,390,215.78 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $82,453,621.04 |

The elements of preferences and toying with Lody & Company are admitted by the defendant.

Marika Lody Runnells is the wife of William Robert Runnells, Jr., and together they were the sole stockholders of Landbank Equity Corporation.

Mrs. Runnells appeared, but when called by the trustee as an adverse witness took the 5th. She identified herself and upon indication she would invoke her Constitutional right, the Court read her her rights under the 5th Amendment to the Constitution of the United States relative to self-incrimination and she clearly invoked her right with the knowledge she is under Federal investigation which may lead to criminal charges being brought.

This cuts two ways. It prevents possible self-incrimination, but she cannot then be a witness on her own behalf. Her defense in this arena to the trustee's formidable case is resultantly meager and consists, chiefly,

of her counsel seeking to impeach the evidence presented by the plaintiff. Otherwise, she has only what spills over from others' testimony and evidence.

Mrs. Runnells must ride upon the wave of the case's basic tenets I and II above. Beyond that, these are but sample details [2], *indicia* of culpability, by way of example, but not limited to them:

(1) All along she had knowledge of the irregularities of Landbank. For instance, T.C. Lee, Jr., who was a former Landbank Vice President, testified his assumption that all was proper within the veil, but was later shattered by reality and his letter of resignation is a startling revelation. He further said that Mrs. Runnells acknowledged the existence of his concerns and assured him they [those involved] would cease and desist.

(2) Kathleen McGaughey, former Landbank Internal Auditor, testified that when she found the company's C.P.A., Owen Thornton, was hiding huge losses from the investors, she reported this to Mrs. Runnells who reacted by questioning Mrs. McGaughey's loyalty.

(3) She became President of Landbank in 1984 with full authority and knowledge of all it was or wasn't. Her salary that year was $296,492.00, a generous stipend for the responsibility which was hers.

*Obviously, she possessed knowledge of the sham Landbank was.*

(4) We find such nuances as Mrs. Runnells having a checking account in her name, reversed, Marika Runnells Lody.

(5) She drew $200,000.00 when she sold Landbank her stock in Richmond Equity Corporation when, the Court is persuaded, the stock was already owned by Landbank.

(6) She bathed and anointed herself in loans at will contrary to written company policy and at the price of sucking the life blood from the business.

*Knowledge and culpability prevailed. Nothing was at arms' length.*

Beyond the preferences received and beyond Lody & Company, what is there which will support by evidence clear and convincing the allegations of fraud?

Remember, the trustee has presented a prima facie case of the wrongs alleged and of the sum each totals ... all of this from Landbank's [the mother lode to which she forever drew for succor] own records. Too, she has not testified in explanation of that prima facie case.

Mrs. Runnells' chief arguable defenses are these:

█ (1) Landbank was not insolvent or, if it was, the trustee's own accountant, Keith Davis, testified that the people there did not think or believe Landbank was insolvent.

It was clearly insolvent by any test and Landbank's own accountant so divulged.

What the people at the trough thought or believed is what they wanted to believe. If they thought it solvent, they were deceiving themselves. William Runnells had been turned down by MasterCard upon an application for a credit card on the grounds of being unworthy credit wise. This was 1983. It would appear that a technical definition would have little meaning for her. She certainly knew of the situation that existed.

█ (2) She showed a desire to convert the ills pointed out to her, as if she was not aware of them, and even took some few steps toward correction. Surely so, lest the well dry up. The evidence will not support a sincere desire nor any significant effort for that matter. Even when accountants pointed out the ills, she *never* acted upon it. She wished the goose would continue to lay that golden fruit, but her lip service did not synchronize with her actions.

---

**2.** It is not the purpose of this or any opinion to touch upon every detail, for to do that one might just as well take the entire trial transcript and make it the opinion with a decision appended to it. The entire testimony and all of the exhibits have been considered. The opinion is the conclusion all of that leads to.

**956**

■ (3) She repaid some loans. Again, certainly so to keep the goose greased, but that does not cancel what was not repaid. After the act, an excuse is offered.

■ (4) She financed the bankruptcy. This preserved, for the moment, the facade. The house was falling, she was left alone to bear it all, her husband had, to put it gently, dropped out of the picture. The record reflects it was a time of great panic. Was the filing of the bankruptcy, Chapter 11, but a futile attempt to stave off the creditor-investors? We think so, for total collapse came a week later.

■ Simply put, being in the center of a stew with knowledge, with nothing at arms' length, and as a conductor through which the manipulations of ninety entities passed is clearly fraud. What is fraud? Collier sums it up from many cases as *"... any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another...."*
3 Collier on Bankruptcy
(15th Ed.), § 523.08[5]

Always wishing we had said it better, that is a superb definition of the fraud codified in the requisite statute, 11 U.S.C. § 523(a)(2)(A).

The grandfather case is *Neal v. Clark*, 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1887). Authors of opinions frequently seek to sell a point or entire opinion by sheer weight of citations going on for half a page or two as if it were to be sold at the stationery store by the pound. They feel, "The more cases I cite, the righter I am." Or are they really unsure of themselves? See an excellent case on fraud, we wrote it, that came from this lowly venue, 75–365–N (unreported), and became a widely cited case of the U.S. District Court, 419 F.Supp. 199 (E.D. Va.1975), *Brown v. Buchanan*.

■ Are "points" not paid a part of the fraud or merely a perk of being an insider? Since this is an allegation of the trustee in his case against most of the defendants, it needs here to be resolved once and for all.

In the second mortgage game a significant part of the income is a high, additional, one-time interest charge for obtaining or granting a loan. As noted, in the Landbank saga it reached as high as forty percent.

Routinely, this was not charged to insiders. As a one-time thing, it might be part of an employee incentive program, but (a) as widespread as here and (b) involving as much money in total as here, it clearly became a fraudulent design to favor themselves. But who were they cheating, only themselves? No, by siphoning off more than salary, actual profits and routine, reasonable perks, they were not leaving enough to pay creditors and investors nor to send off to mortgage holders on behalf of borrowers principal and interest payments borrowers are now delinquent in.

As the country folks would aptly say, sucking at the hind tit of "points" was just another way of milking the cow.

The trustee shall have judgment against Marika Lody Runnells, for actual damages, the sum of $5,463,405.26 for actual fraud, fraudulent conveyances and preferring herself.

The issues of punitive and conspiracy damages are addressed at the end after the Court has addressed the case against each defendant.

## THOMAS EBMEIER

## KIMBERLY RUNNELLS EBMEIER

■ The trustee seeks from Thomas and/or Kimberly Runnells Ebmeier

| | |
|---|---|
| —Loans due | $82,482.74 |
| —"Points" not paid | 15,861.43 |
| —Downpayment not required | 10,000.00 |
| —Payments made for them by Landbank | 15,217.00 |
| —Bonus (Kimberly) | 2,400.00 |
| —Automobiles (Kimberly) | 10,000.00 |
| | $135,961.17 |
| Punitive damages | 407,883.51 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $61,143,844.68 |

Kimberly is the daughter of William R. Runnells, Jr., is married to Thomas Ebmeier and was employed by Landbank and

related entities. Thomas, too, was employed by Landbank. As there has been no stripping of even the generous salary of Marika Runnells, there is none here to this young couple. They performed services and were paid. Fair enough.

While over $100,000.00 flowed to and enriched them, the trustee has not proved the requisite knowledge for this to be fraud on their part. Unlike Marika Runnells who knew the inside story, they could have thought they worked for Santa Claus.

The trustee says, "The Ebmeiers have improperly benefitted from the fraud scheme perpetrated on Landbank Equity Corporation." True, they benefitted considerably but without knowledge or guilty scienter.

The Court accepts Kimberly's explanation that she did not know the American Appraisal Co. was in her name until asked to convey it. This reflects more than naivete. It is allowing one's self to be used without murmuring. It's that sort of thing —borderline. The evidence, however, must be clear and convincing. We are not convinced.

■ Now, they are indebted to Landbank and its trustee for any loans unpaid as reflected on the books, this as a matter of a debtor-creditor relationship and not by way of scheme.

## STEVEN Z. RUNNELLS

The trustee seeks from Steven Z. Runnells:

| | |
|---|---|
| —Loans due | $266,622.77 |
| —"Points" not paid | 62,087.00 |
| —Improper salary | 7,939.95 |
| —Improper transfer | 25,100.00 |
| —Dealings with Lody & Company | 157,253.00 |
| —Pinball repairs | 1,069.40 |
| | $ 520,072.12 |
| Punitive damages | 1,560,216.36 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $62,680,288.48 |

He admits he is indebted for the $157,-253.00 partnership debt of Lody & Company.

Names in this case are not always indicative. Steven Z. Runnells is the son of Marika Lody Runnells, stepson of William Runnells. Half-sister Kimberly is 23, Steven is 20.

It would be easy to adopt for Steven the conclusion of the Court relative to Kimberly, to-wit: he had no knowledge or intent. That will not float in his case, for the evidence clearly and convincingly proves he was a smart insider, intent upon making the most of it.

Indeed, his involvement is more exciting than the adventures of Dick Rover or Frank Merriwell.

His knowledge and involvement were considerable. By way of example, he founded two corporations; he knew his father did not actually go out and appraise property, but certainly billed for this; he knew property was being placed in his name without consideration; six or eight automobiles came his way; he was a general partner in Lody & Company; he accepted many large and non-course of business gifts; and on and on.

Steven's defenses to the case produced by the accountant from the defendant's own records are chiefly these:

■ (1) The gifts of autos and things were a result of filial love. However, they were not *bona fide* when viewed through his knowledge that he, too, was at the trough enriching himself any way he could. The gifts, then, were a part of a prevailing philosophy of "get what you can from Landbank."

(2) There is adequate consideration when you receive property and have to make payments on it yourself because it is encumbered. But this is a part of denuding Landbank of its assets; it is still a fraudulent transfer. There was no consideration.

■ (3) The salary was earned. Yes, the Court agrees. Although high and often for part-time work, it was not fraudulent. The $25,100.00 "bonus" of 1984 is, however, just another hefty swig at the trough.

■ (4) The loans Steven Runnells owes Landbank's trustee cannot here be reached since there has been no demand to pay these to the holder(s).

This is a prevailing legal issue touching several defendants which can be addressed here. Be alert. There are two separate matters. (A) Has Steven Runnells enriched himself with loans? The record is clear he has. Indeed, he cannot dispute the existence of the loans and under the legal test of fraud set forth earlier, is a part of that "design ... to circumvent and cheat another...." (B) The fact Landbank or now its trustee may not have been called upon to pay these debts yet is not overriding. This Runnells shall not have to pay twice and if he is eventually entitled to any credits, he shall have them; however, he can be pursued by the trustee for what he owes Landbank.

■ (5) He did not solicit property placed in his name. Yes, but he did not resist and he had the knowledge step-sister Kimberly did not possess. The number of "involvements" which he says are individually innocent reflect considerable involvement in total. A pattern.

The Court does not believe his testimony that he did not know property was being transferred to him for a purpose. No other purpose existed for moving property around, transferring it, except to remove it from view, hide it.

The arguments that "You cannot prevent someone from putting property in your name," a typical defense, is but a defense mechanism which seeks to excuse the participation in the charade which was typically theirs. Stephen held the property, knowingly, for the convenience of those stripping Landbank to the marrow. Never a solicitor, but always willing.

(6) A pinball machine is but a flake in the crust, but the Court finds it clearly in his name, again, courtesy of Landbank's funds. We see once more the nature of the

excuses with the offering that he was merely acting for his father.

The Trustee shall have judgment aginst Steven Z. Runnells, for actual damages, the sum of $512,132.17.

The issue of punitive and conspiracy damages are addressed later.

### LUCILLE P. RUNNELLS

The trustee seeks from Lucille P. Runnells:

| | |
|---|---|
| —Improper salary | $23,800.00 |
| —Improper profit on sale of Elbow Road property | 36,195.15 |
| —Lack of consideration for condominium | 45,000.00 |
| —Improvements to condominium | 1,160.00 |
| —1983 Jaguar | 28,611.00 |
| | $134,766.15 |
| Punitive damages | 404,298.45 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $61,139,064.60 |

Mrs. Runnells is the mother of William Runnells and is here involved primarily because she at times worked for the enterprise. Yet, her working relationship is not entirely above board. While paid by Landbank, her in-house telephone was Property Buyers' into whom considerable property was transferred after foreclosure.[3]

But she did work and the legal test the trustee must meet would not deny her her salary. Indeed, she listed it on her tax returns.

■ Her Jaguar she enjoyed for several years before its transfer to her in 1985 and coming at a time of insolvency, etc., it is an unlawful transfer.

The Court is of the opinion for the reasons advanced by defendant's counsel that the transfer of the Birdneck Commons condominium was for good value.

■ The same cannot be said for the forty-one acres on Elbow Road. She was an insider and this transaction with Frank Butler netted her a handsome profit in but a few days. The Court believes this was

---

**3.** The alarming rate of foreclosures was concealed by transferring that property out of Landbank's name into that of Property Buyers, Inc., thus keeping Landbank's record better in investors' eyes.

just another move on the gigantic chess board to shift the property around. Surely, foreclosure threatened, but Landbank, and now its fleeced creditors, are entitled to any profit and not Mrs. Runnells.

The trustee shall have judgment against Lucille R. Runnells, for actual damages, the sum of $64,806.15.

The issue of punitive and conspiracy damages shall be addressed later.

While certainly not considering it as evidence, only demeanor, the Court agrees with the characterization by plaintiff's counsel that in her testimony Mrs. Runnells "exhibited a certain amount of contempt for the proceedings." As we shall comment on later, those who might have been listened to had occasion to raise questions or to protest ... but remained silent because the honey was flowing their way; others, at considerable jeopardy, voiced concern, but not the Runnells. It is a shame.

> "It is with a pious fraud as with a bad action; it begets a calamitous necessity of going on."
>
> —Thomas Paine

## ROBERT D. RUNNELLS

The trustee seeks from Robert D. Runnells:

| | |
|---|---|
| —Loans due | $146,040.30 |
| "Points" not paid | 12,164.00 |
| Improper salary | 17,550.00 |
| | $175,754.30 |
| Punitive damages | 527,262.90 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $61,303,017.20 |

The trustee really concedes that Robert, son of William and step-son of Marika Runnells, earned his salary. While salaries have been generous, the Court throughout this opinion has thought it would be over-reaching for the trustee to recover these.

The issue of "points" the Court has previously considered at page 956.

The evidence will not support any loans due Landbank by Robert, but as a co-owner or co-obligor with Stephen Runnells must

surrender or convey any interest on any property so held.

The trustee shall have judgment against Robert D. Runnells for actual damages, the sum of $12,164.00.

The issue of punitive and conspiracy damages are addressed later.

## RICHMOND EQUITY CORPORATION

■ This disease now known as Landbank would have spread to Richmond as Richmond Equity Corporation was there established to originate loans. It was owned by Landbank and is itself in bankruptcy. It appears that the only property involved in this action is the $200,000.00 drawn by Marika L. Runnells which the Court has ruled upon above.

Indeed, *if* anything else exists in Richmond Equity, it belongs to Landbank. There is no sum certain the Court can award.

## KIMBERLY & COMPANY

Kimberly & Company was a general partnership found by William and Marika Runnells to develop Sewell's Garden Apartments in Norfolk. It is now defunct and no one disputes the fact the trustee can have whatever he may find there.

## LODY & COMPANY

■ Lody & Company was a sham partnership, without capitalization, created for the purpose of dealing in rental property.

It, too, is now a dry hole and the trustee can have whatever he may here find.

## WILLIAM–ROBERT & COMPANY

■ While a defendant here, like Richmond Equity, Kimberly & Company and Lody & Company, it appears to now have nothing, but, whatever, it is the trustee's.

William-Robert & Company was, the better weight of the evidence shows, a general partnership of William R. Runnells, Jr. and John E. Runnells, brothers. It pretended, at times, to be a limited partnership. We conclude it flipped back and forth as convenience required. Indeed, it was the chief trocar for taking money, withdrawals, from Landbank. Unbelievably, it was paid for 4,461 appraisals when the evidence is really

uncontradicted that the appraisals were a formality, a sham. Some were signed in blank, others were never made and most were made by simply riding by the house.

The trustee is entitled to anything of William-Robert & Company.

## JOHN EDWARD RUNNELLS

The trustee seeks from John Edward Runnells:

| | |
|---|---|
| —Loans due | $ 1,175,663.00 |
| —"Points" not paid | 470,446.00 |
| –Improper salary | 8,000.00 |
| —Dealings with | |
| Prime Mortgage | 37,500.00 |
| Property Buyers, Inc. | 2,124,928.00 |
| William-Robert & Co. | 1,401,680.00 |
| John Edward Properties, Inc. | 556,500.00 |
| Runnington Investment | 806,045.00 |
| —Krebec Payment | 20,166.30 |
| | $ 6,600,928.30 |
| Punitive damages | 19,802,784.90 |
| Conspiratorial damages | 60,600,000.00 |
| Total | $87,033,713.20 |

█ John Edward Runnells, brother of William, next to Marika Runnells among the defendants, was more active and had more knowledge of the fraud perpetrated than anyone else. The evidence clearly reveals his involvement to be major. He was dealing in millions. He was in it up to the hilt.

He was involved in John Edward Properties, Inc.; Property Buyers, Inc.; Property Holding Corporation; Prime Financial Corporation; William-Robert & Company; and Runnington Investment Corp. As set forth above under the criteria for piercing the corporate veil, and coupled with the definition of fraud being used, these were but conduits, hiding places, supply lines and covers for the entire enterprise. They were not free-standing entities.

█ The records of Landbank clearly reflect the loans to these entities managed by John Edward ... and in the amounts sued for, with the exception of Prime Mortgage. The Court is of the opinion the evidence there is not sufficient to

tie him to its destiny. The defendant's explanation concerning William Robert & Co. is of two partnerships and a defense that he was but a limited partner. Nevertheless, his culpability was ever present and fraud is not limited because one may be but a limited partner, if there was participation.

Further, John Edward shows up on the records individually indebted to Landbank for $1,175,663.00.

█ The Court has sooner decided that while a favor or two to an insider by way of no "points" might be innocent, the large number and the total amount make them, too, a part of the taking. The trustee's accountant was both careful and fair and testified to "points" paid by John Edward for which credit is given.

█ The Court is of the opinion after going through the records again and again and after reviewing the testimony that no work was performed for Landbank; therefore, the $8,000.00 paid is a part of the fraudulent taking.

The Krebec property in Virginia Beach's Lago Mar netted him $20,166.30 unjustly when he had no interest in it. This the evidence proves clearly and convincingly.

The trustee shall have judgment against John Edward Runnells in the sum of $6,563,428.30.

The issue of punitive and conspiracy damages are addressed later.

A judge may not isolate and hold his factual findings immune by chalking them off to demeanor and credibility. We are aware of that and it has not been done. However, in a case such as this the Court has heard, the burden shifting, the explanations of the defendants. The point is pertinent with this witness who the Court found resentful, handily using "I can't recall," crying "I have no records to defend myself with," yet answering his attorney's questions precisely.[4]

---

4. The Court has previously held that both the trustee and the Federal Bureau of Investigation made available to the defendant all of the records they hold. The matter was inquired into and the Court is persuaded this is so.

When Landbank's own C.P.A., Owen Thornton, took the Fifth Amendment, the Court recessed the trial a month to allow him to secure another accountant to check the records. This was done and Luther J. Howell, C.P.A., was utilized. However, his testimony resulted in no definite defense whatsoever.

JOHN EDWARD PROPERTIES, INC.

The trustee seeks from John Edward Properties, Inc.:

| | |
|---|---|
| —Loans due | $23,500.00 |
| —Preferences | 533,000.00 |
| Total | $556,500.00 |

John Edward Runnells, was the uncontested sole stockholder and officer of this entity, another Landbank *alter ego, supra.*

▉ The evidence is clear and convincing. John Edward wants the trustee "to produce cancelled checks to prove all the payments alleged." As the trustee's C.P.A. testified, many records are missing; therefore, we must rely on those in hand, if sufficient to reflect an indebtedness. Landbank's own records reflect these, records made contemporaneously with the event. They are believable. The $23,500.00 is there.

▉ As for the $533,000.00, this sum was repaid by Landbank to John Edward Properties within a year. The bankruptcy law is so written, to be fair to *all* creditors, that favored or preferred payments to a creditor within a time frame can be recovered, brought into the pot for the benefit of *all* creditors. 11 U.S.C. § 547.

The time frame is ninety days unless an insider is favored, then it is one year. John Edward Properties, John Edward Runnells and Landbank Equity Corporation are all the same. A part of the same fraud and scheme. 11 U.S.C. § 101(28). John Edward Properties is John Edward Runnells', his alter ego. He was within the inner sanctum of Landbank and had sufficient control to be an insider by deed as well as by blood. Nothing of an arms-length nature ever existed.

▉ John Edward would place upon "insider" a rigid definition which would exclude himself; however, this was not the intent of the statute, 11 U.S.C. § 101(28). Collier says

"An insider is an *entity* whose close relation with the debtor subjects any transaction made between the debtor and such entity to heavy scrutiny."

2 Collier on Bankruptcy

101.28 (15th Ed.)

[emphasis added]

Entity is not limited to a person, but includes partnerships of all kinds and corporations. H. Rept. No. 95–595, p. 312, U.S.Code Cong. & Admin.News 1978, p. 5787. The evidence clearly shows that a double insider relationship existed. to-wit: John Edward Runnells and John Edward Properties into Landbank and Landbank into the personal and affiliate relationships of the former. *In re Colesville Medical Center,* 20 B.R. 87 (B.Ct.D.Md.1982).

A case from the Fifth Circuit speaks of "a close relationship" as indicative of an insider and such a relationship abounded between Brother Bill and Brother John Edward. *Wilson, Trustee v. Huffman,* 11 B.C.D. 144, 712 F.2d 206 (5th Cir.1983). It should be read for not only what it says, but for its many citations on the point.

The Bankruptcy Code at § 547(c) provides for exceptions to preferences and one of these is if made in the ordinary course of business. The defendant would escape by technicalities that apply to honest people, not wrongdoers as here.

The trustee shall have judgment against John Edward Properties, Inc., in the sum of $556,500.00, actual damages.

Exemplary Or Punitive Damages

While some courts may feel punitive damages should be rarely or never awarded, they should once again turn to the law rather than their own inclination. The thing that has turned so many "off" concerning punitive damages has been the abuse or excess of other courts in awarding them.

■ It has a common law source where the emphasis is more on the word *exemplary* rather than punitive. It is damages imposed by way of punishment upon a wrongdoer as a warning to him and others to prevent a repetition or commission of a similar wrong. *Baker v. Marcus*, 201 Va. 905, 114 S.E.2d 617 (1960); *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967).

■ Exemplary damages must be grounded in a tort and do not stand alone or as a result of a contractual matter. *Norfolk & W.R. Co. v. Wysor*, 82 Va. 250 (1886). The Court having awarded actual damages and the actions of the defendants being clearly aggravated, the awarding of exemplary damages is compelling. Fraud is an aggravated element as is a conscious disregard for the rights of another. *Strickler v. Neff Trailer Sales, Inc.*, 542 F.2d 890 (4th Cir.1976). That's what the Landbank case is all about, the conscious, wanton disregard of the rights of others. Actual malice is not necessary. *Baker v. Marcus, supra.*[5]

These Landbank defendants took, moved property around, favored themselves, and bled the company to death for their own selves' sake. If exemplary damages are not here clearly proper, there has never existed a case where they were.

The defendants not only deny any wrongdoing, that is expected, but they show no remorse for the toll taken, monetary and human, of investors and borrowers. Except that *their* goose has been gored, they do not feel or appreciate the huge harm done to others. There exists here a greed for which they make no apology. Indeed, it is flaunted. Exemplary damages may teach such no lesson, but it must try.

■ And what shall these exemplary damages be? They must bear some reasonable proportion to the actual damages shown. *United Constr. Workers v. Laburnum Constr. Corp.*, 194 Va. 872, 75 S.E. 694 (1953), *affirmed*, 347 U.S. 656, 75 S.Ct. 833, 98 L.Ed. 1025 (1954); *Fishburne v. Engledove*, 91 Va. 548 (1895). The Court is of the opinion the exemplary damages should be threefold the actual damages; therefore, exemplary damages are awarded the trustee of Landbank Equity Corporation against the defendants as follows:

| | |
|---|---|
| Marika Lody Runnells | $16,390,215.78 |
| Steven Z. Runnells | $ 1,536,396.51 |
| Lucille P. Runnells | $ 194,418.45 |
| Robert D. Runnells | $ 36,492.00 |
| John Edward Runnells | $19,690,284.90 |

### A Conspiracy?

■ The trustee of Landbank Equity Corporation sues not only for actual damages incurred as a result of the actions of the defendants and for punitive damages as well, but he further alleges that all of this was a conspiracy. Was it?

It certainly smells like one. Here we have one family using Landbank at will. He, the trustee, argues that the conspiracy is a wheel with a hub with spokes running from the hub, but with no rim as opposed to a circle-wheel conspiracy.

---

5. While not here applied as a conclusion of law, the development of exemplary damages to vindicate societal interests where the tortious act of the defendant rises to the level of criminal conduct which has gone unprosecuted is interesting. *Wells v. Smith*, 297 S.E.2d 872 (W.Va. 1982).

A.                                        B.

With a circle theory they would each know what all of the others are doing, to-wit: they would share common knowledge. There is certainly no evidence that they sat around the table and said, "What can we take next?"

With the hub-spoke theory William and Marika Runnells were the hub and each defendant operated off of the hub like a spoke. Each drew its power from the hub, the hub was willing for each spoke to enjoy the fruits of Landbank.

This latter theory is certainly what was occurring. William Runnells set them up; moved loans, favors and gifts out through the spokes; and used them, *willingly,* to receive and hold property. But, still, is it a conspiracy? It certainly looks like one.

An oft-quoted definition of a conspiracy is that found in *Ross v. Peck Iron and Metal Co.,* 264 F.2d 262 (4th Cir.1959) taken from 1939, 15 C.J.S., Conspiracy, § 1: "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."

A case more to the point is *Nationwide Mutual Fire Insurance Company v. Jones,* 577 F.Supp. 968 (W.D.Va.1984), where that court interprets the Virginia Conspiracy Statute upon which the trustee here relies. It is 18.2–499, Code of Virginia, 1950, as amended, and it is lengthy. We shall not copy it here; look it up. Its title is sufficient—"Combinations to Injure Others In Their Reputation, Trade, Business or Profession." 18.2–500 provides for three-fold damages by reason of a violation of 499.

The court in *Nationwide v. Jones* held that "the injury must not be a result or secondary effect of an action taken for mere *personal gain."* [Emphasis added.]

What do we have with Landbank and the Runnells family? The Court does not find that Landbank was necessarily created as a slaughterhouse for sheep. It was established, sadly, in an area where little or no regulation existed and one could slaughter the sheep apparently within the law. That is Virginia's shame, but is in the laps of others should they act.

So, Landbank was set-up as a legitimate business to utilize the weaknesses of the law ... and it made money.

The Runnells family favored themselves with the profits and with good jobs. These they would be entitled to: the proper profits as a fruit of their enterprise; the salaries, although high, as a fruit of their labor. *But then they began to believe it was all theirs, everything.*

Beyond the profits and salaries, they thought the gross, the entire cash flow was theirs to do with as they wished. Their greed for a lavish lifestyle has few parallels. You see, when they considered the

gross all theirs, they put themselves above the creditors, the borrowers and the investors. For their Romanesque lifestyle they spent not just the profits and salaries, but they spent money which should have been passed on for borrowers to lenders, money which should have been used to pay debts.

For personal gain, yes; to enrich themselves thusly at the expense of others, indeed; at the hurt and suffering of others, yes. It all reflects a greed and callousness which sets them apart like the Mark of Cain sets others apart. They are known for what they have done.

All of this it is, but it is not a conspiracy under the law and this allegation is dismissed.

All of facts herein which the Court has concluded are supported by evidence which is clear and convincing. *Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975).

In final summary, Laurence H. Levy, Trustee of Landbank Equity Corporation, shall have specific judgment against these defendants in the sum total of

| | |
|---|---|
| Marika Lody Runnells | $21,853,621.04 |
| Steven Z. Runnells | 2,048,528.68 |
| Lucille P. Runnells | 259,224.60 |
| Robert D. Runnells | 48,656.00 |
| John Edward Runnells | 26,253,713.20 |
| John Edward Properties, Inc. | 556,500.00 |

and all other recoveries set forth herein.

AND ALL OF THIS IS SO ORDERED.

### Epilogue

Somehow, for some reason, at the end of this saga a nursery rhyme rises to mind and will not be suppressed.

"Come, let's to bed,
Says sleepy-head;
Tarry a while, says slow;
Put on the pot,
Says Greedy-gut,
We'll sup before we go."

*Let's to Bed*
—The Prolific Anonymous

Most of them make a simple, innocent point. This one is no exception.

*More.*

That's what everyone wants. More.

Consider what it does to those who are otherwise hardworking people. Sad, so sad.