In re LANDBANK EQUITY
CORPORATION, Debtor.

Laurence H. LEVY, Trustee,
Plaintiff/Appellee,

v.

William Robert RUNNELLS, Jr.; Marika Lody Runnells a/k/a Marika Lahti Runnells; John Edward Runnells; Stephen Z. Runnells; Robert D. Runnells; Lucille Runnells; John Edward Properties, Inc., Defendants/Appellants,

and

Thomas Ebmeier; Kimberly Runnells Ebmeier; Property Buyers, Incorporated; Runnington Investment Corporation; William–Robert & Company a/k/a William Robb & Company; Kimberly & Company; Lody & Company; Mortgage Express, Inc.; Richmond Equity Corporation; Sovran Financial Corporation of Virginia; Statewide Mortgages, Inc.; Prime Financial Corporation; General Mortgage Corporation; Butler, Payne & Griffin; Thalia Meadows Holding Corporation; Property Holding Corporation; Runnington Holding Corporation; Defendants.

No. 85–01541–N.
Adv. No. 85–0727–N.
Civ. A. No. 86–963–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

June 10, 1987.

Louis N. Joynes, Taylor, Walker & Adams, Norfolk, Va., Frank J. Santoro, Marcus & Santoro, Portsmouth, Va., David H. Adams, Clark & Stant, Virginia Beach, Va., for plaintiff/appellee.

Tom C. Smith, Edward T. Caton and Barry, Randolph Koch, Caton & Koch, P.C., Virginia Beach, Va., for defendants/appellants.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on appeal of an Order of the Bankruptcy Court, 66 B.R. 949, awarding the Trustee of Landbank Equity Corporation (Landbank) monetary damages totalling $51,020,-243.53 against Marika Lody Runnells, Stephen Z. Runnells, Robert D. Runnells, John Edward Runnells and John Edward Properties, Inc. (Appellants). The present suit is an outgrowth of the bankruptcy proceeding of Landbank which was owned and operated by William R. Runnells, Jr. and his wife, Marika Runnells. The Bankruptcy Court found that the Appellants wrongfully enriched themselves from the assets of that corporation and its affiliates through actual fraud, fraudulent conveyances, loan preferences and other forms of self-dealing.

The specific findings of the Bankruptcy Court as to monetary damages awarded against each of the Appellants is as follows:

### Marika Lody Runnells

| | |
|---|---|
| $   484,755.74 | – Loans due |
| 70,360.00 | – Preferences |
| 68,786.00 | – "Points" not paid |
| 361,477.00 | – Indebtedness to Kimberly & Company |
| 524,135.64 | – Mortgage Express, Inc. |
| 865,665.00 | – Richmond Equity Corporation |
| 806,045.00 | – Runnington Investment Corporation |
| 2,124,928.00 | – Dealings with Property Buyers, Inc. |
| 157,252.88 | – Dealings with Lody & Company |
| 5,463,405.26 | |
| 16,390,215.78 | – Punitive damages |
| $21,853,621.04 | |

### Stephen Z. Runnells

| | |
|---|---|
| $   266,622.77 | – Loans due |
| 62,087.00 | – "Points" not paid |
| 25,100.00 | – Improper transfer |
| 157,253.00 | – Dealings with Lody & Company |
| 1,069.40 | – Pinball repairs |
| $   512,132.17 | |
| 1,536,396.51 | – Punitive damages |
| $ 2,048,528.68 | |

Lucille P. Runnells

| | | |
|---:|:---:|:---|
| $ | 36,195.15 | – Improper profit on sale of Elbow Road property |
| | 28,611.00 | – 1983 Jaguar |
| $ | 64,806.15 | |
| | 194,418.45 | – Punitive damages |
| $ | 259,224.60 | |

Robert D. Runnells

| | | |
|---:|:---:|:---|
| $ | 12,164.00 | – "Points" not paid |
| | 36,492.00 | – Punitive damages |
| $ | 48,656.00 | |

John Edward Runnells

| | | |
|---:|:---:|:---|
| $ | 1,175,663.00 | – Loans due |
| | 470,446.00 | – "Points" not paid |
| | 8,000.00 | – Improper salary |
| | 2,124,928.00 | – Dealings with Property Buyers, Inc. |
| | 1,401,680.00 | – Dealings with William Robert & Company |
| | 556,500.00 | – Dealings with John Edward Properties, Inc. |
| | 806,045.00 | – Dealings with Runnington Investment |
| | 20,166.30 | – Krebec payment |
| $ | 6,563,428.30 | |
| | 19,690,284.90 | – Punitive damages |
| $26,253,713.20 | | |

John Edward Properties, Inc.

| | | |
|---:|:---:|:---|
| $ | 23,500.00 | – Loans due |
| | 533,000.00 | – Preferences |
| $ | 566,500.00 | |

Appellants allege numerous errors of fact and law in the Order of the Bankruptcy Court. Marika Lody Runnells, Stephen Z. Runnells, Lucille P. Runnells and Robert D. Runnells jointly allege five errors in the judgment of the Court below. Each of these defendants also individually alleges numerous grounds of error. In addition, numerous errors are cited by John Edward Runnells and John Edward Properties, Inc.

■ The factual findings of the Bankruptcy Court will be set aside only upon a determination by this Court that such findings are clearly erroneous with due regard being given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses.[1] Bankr.Rule 8013 (1984); *Harman v. Levin*, 772 F.2d 1150, 1152–53 (4th Cir.1985); *See Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564,

105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. The reviewing court may not decide factual issues *de novo. Id.* Moreover, "when a trial judge's finding is based on his decision to credit one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575, 105 S.Ct. at 1512.

The Bankruptcy Court noted that great weight was given to the testimony of Keith L. Davis, C.P.A., the Trustee's star witness and representative of KMG Main Hurdman, a prominent investigative accounting firm that spent 2,900 hours reviewing Landbank's records for the Trustee. The Court found that "the accountants make their case and while the degree of proof does not change, the burden certainly shifted to the defendants to explain what happened." Furthermore, the Bankruptcy Court noted that "two cardinal premises" prevailed throughout the trial and influenced the Court's decision: (1) the conclusion of the accountants that the books and records of Landbank are in a state of gross disarray, reflecting a complete lack of internal control, so that their accuracy is very much in question; and (2) in chief, the Trustee has built his case upon defendants' own records.

I.

A.

Marika Lody Runnells, Stephen Z. Runnells, Lucille P. Runnells and Robert D. Runnells allege first that the Bankruptcy Court erred in piercing the corporate veils

---

1. The Court has previously ruled that this is a core proceeding for the purpose of determining the standard of appellate review. *William Rob-* *ert Runnells, Jr., et al. v. Laurence H. Levy, Trustee, et al.*, 77 B.R. 41 (E.D.Va.1986) (UP).

of Mortgage Express, Inc., Runnington Investment Corporation, Property Buyers, Inc., Prime Mortgage Company and Statewide Mortgage Company.

The Bankruptcy Court found "basic badges of fraud" in the operation of Landbank and its affiliates by the Runnells family:

(1) The accountants found more than ninety (90) names of other entities (partnerships, corporations, companies and individuals) between and among which the assets of Landbank were passed.

(2) The accountants concluded that considerable property was placed in the names of strawmen to deceive and conceal problems.

(3) Funds were transferred constantly, as for example, between Property Buyers, Inc. and Landbank.

(4) Millions of dollars of property has vanished. For instance, once Landbank had sixty automobiles, but at bankruptcy had but one.

(5) Insiders were constantly favored, particularly through loans and no charge for "points" in transactions, while the public paid as high as forty points for a loan.

(6) Financial statements never reflected loan loss write-offs; foreclosure loan losses were hidden in the Property Buyers entity.

(7) Loans were constantly made to insiders in spite of a written December 3, 1980 company policy prohibiting this.

(8) Open access to the drawing of checks existed on a higher [sic] level.

(9) Appraisals were signed in blank or were not actually made at all.

The Court held that these factors indicated that all of the Landbank affiliates were alter egos of Landbank. The Bankruptcy Court further determined that the corporate veils of these affiliates should be pierced based upon the presence of factors outlined by the Fourth Circuit in *DeWitt Truck Brokers, Inc. v. Flemming Fruit Co.,* 540 F.2d 681 (4th Cir.1976), i.e. inadequate capital; failure to observe corporate formalities; nonpayment of dividends; the insolvency at the time; siphoning of funds

by a dominant stockholder; nonfunctioning of other officers; absence of corporate records; that the corporation was merely a facade; and the presence of injustice or unfairness.

In *DeWitt*, the Fourth Circuit was applying South Carolina law. However, the *DeWitt* standards have been applied by the Fourth Circuit in a bankruptcy case arising under Virginia law. *See In re County Green Limited Partnership,* 604 F.2d 289 (4th Cir.1979), *rev'g,* 438 F.Supp. 701 (W.D. Va.1977). Nevertheless, Appellants claim that the Bankruptcy Court erred in failing to apply the standard for piercing a corporate veil enunciated by the Virginia Supreme Court in *Beale v. Kappa Alpha Order,* 192 Va. 382, 64 S.E.2d 789 (1951). The court in *Beale* held:

Just when a corporation will be regarded as the adjunct, creature, instrumentality, device, stooge or dummy of another corporation is usually held to be a question of fact in each case. As above stated the general rule is that the separate corporate entity of corporations will be observed by the courts, even though one may dominate or control another, or may treat it as a mere department, instrumentality, agency, etc.; and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify fraud or crime of another (citation omitted).

*Id.* 64 S.E.2d at 798.

In *Lewis Trucking Corporation v. Commonwealth,* 207 Va. 23, 147 S.E.2d 747 (1966), the State Supreme Court reaffirmed the holding in *Beale* and further held:

In the case of a one-man corporation or the corporation in which all stock is owned by a single individual except a few shares necessary to qualify directors, courts have shown great liberality in lifting the veil of the corporate entity and holding the sole shareholder and the corporation to be one and the same. Where a corporation is so organized and controlled as to become the mere agent or instrumentality of another corporation, the courts have laid down

the rule that the doctrine of corporate separateness may be ignored.

*Id.* 147 S.E.2d at 753–754.

■ The record indicates that Runnington Investment Corporation, Mortgage Express of Virginia, Inc., Property Buyers, Inc. and Prime Mortgage Company were all owned and operated by the Runnells family (Tr. 42, 228–229, 248, 289, 433, 754, Plaintiffs' Ex. 2A, Defendants' Ex. 1). Accordingly, the liberal rule of *Lewis Trucking* will apply. Because the record further indicates that these companies were instrumentalities used to perpetuate and conceal the fraudulent business operations of the Runnells family, the Bankruptcy Court did not err in piercing the corporate veils of these entities.[2]

■ Appellants argue that Runnington Investment Corporation "was a development corporation, that it borrowed money for real estate investments through Landbank Equity Corporation, had minutes and corporate minute books, and was incorporated prior to Landbank Equity Corporation." (Appellants' Brief, p. 28). Minutes of one meeting of the stockholders and board of directors of Runnington were produced at trial (Tr. 36, Plaintiff Ex. 7). Testimony at trial revealed that properties developed by Runnington were financed by loans from Landbank placed in the names of Landbank employees. The notes on these "strawman" loans were then sold to investors (Tr. 214–215, 432–435). Stephen Runnells testified that Runnington was known by several different names and that the Runnells used the company to "collect all the rent for the rental property in everyone's name," including rent on properties held by John Edward Properties, Inc. and Lody and Company (Tr. 544). Stephen and Lucille Runnells were the beneficiaries of gratuitous transfers from Runnington in the form of real estate and cash bonuses (Tr. 146–148, 520–521, 617–618, Plaintiffs'

Ex. 45, 46). The evidence supports a finding that Runnington Investment Corporation was an instrumentality of Landbank used by the Runnells' family for fraudulent purposes.

■ Mortgage Express of Virginia, Inc. received cash loans from Landbank as well as payments described as brokerage fees (Tr. 52). Appellants introduced evidence that Mortgage Express was in the loan brokerage business and that it generated income for Landbank in the form of loan points (Tr. 805–806). However, no formal brokerage agreement between Mortgage Express and Landbank was found (Tr. 825). In fact, the only discovered records of Mortgage Express consist of a check register and bank statements (Tr. 805). A former Mortgage Express employee testified at trial that completed loan packages were sent to Landbank, were handled by a regional manager who was a Landbank employee, and were ultimately funded by Landbank (Tr. 842–844). Based on the foregoing, the trier of fact could conclude that Mortgage Express, Inc. was a mere instrumentality of Landbank's fraudulent operations.

■ Testimony at trial revealed that Property Buyers, Inc. was indebted to Landbank in the amount of $2,124,198.00 based upon a series of transactions whereby foreclosed property was transferred from Landbank to Property Buyers without consideration (Tr. 92, 224–225, 862). The transfers were not documented, nor were corporate minutes found reflecting authorization for the transfers (Tr. 93). In 1985, Landbank wrote off as an expense the amounts owed to it by Property Buyers as a result of these transactions (Tr. 92–93, 326).

Mr. Davis testified that by setting up Property Buyers as a separate corporation to handle Landbank's foreclosures, Land-

---

**2.** Although Appellants allege that the Bankruptcy Court erred in piercing the corporate veil of Statewide Mortgage Company, Statewide is not mentioned in discussion of the issue on brief. According to the testimony at trial, V. Pledger held 50 percent of the stock in Statewide, B. Hatcher held 49 percent and 1 percent was held

by S. Eggleston (Tr. 795). There is no indication that any of these Appellants was held liable for assets of Landbank allegedly diverted to Statewide. Consequently, this Court finds no basis for a review of the evidence with regard to Statewide.

bank was able to avoid having to report foreclosure losses on its own balance sheet (Tr. 203–204). Minutes from a board meeting of Landbank held on June 18, 1984 indicate that Property Buyers was to be used as a means of avoiding the revelation of foreclosure losses to Landbank investors (Tr. 227–229).

Finally, the Court notes that in his final argument before the Bankruptcy Court, counsel for Appellants appears to concede that sufficient evidence was presented at trial from which the trier of fact could conclude that the corporate veil of Property Buyers should be pierced (Tr. 666).

■ An investigation of Prime Mortgage Company, also known as Prime Financial Corporation, revealed that this company received $37,500.00 in brokerage fees from Landbank (Tr. 46). However, Prime Mortgage had no independent employees. Its employees were actually employees of Landbank (Tr. 50). No payroll payments were noted on the company's check register (Tr. 793–794). John E. Runnells testified that he "believed" he was president of Prime Mortgage (Tr. 465). According to a November 19, 1984 letter drafted by Landbank's accountant, Prime Mortgage had no assets, liabilities or net worth and was merely a trade name used by Landbank (Tr. 824, Defendants' Ex. 1). This corporation was clearly a sham used to divert funds from Landbank.

The courts will look beyond the corporate veil "whenever reason and justice require it although the acts of the parties amount to constructive fraud only, the rule not being limited to cases where they have been guilty of actual fraud and criminal intent." *Lewis Trucking*, 147 S.E.2d at 753. The record as a whole indicates that Runnington Investment Corporation, Mortgage Express, Inc., Property Buyers, Inc. and Prime Mortgage Company were intertwined with and dependent upon Landbank in their operation and financing and that these companies were used to divert funds from Landbank and its creditors. Because the record further indicates with great clarity that the Runnells' business operation, of which Landbank was the core, was char-

acterized by fraud and detrimental to both investors and the public which it purported to serve, the Bankruptcy Court's findings are not "clearly erroneous" under the standards set forth in *Beale* and *Lewis Trucking*. See *Matter of Abingdon Realty Corp.*, 21 B.R. 290, 292 (Bkrtcy.E.D.Va. 1982).

### B.

The second error of the Bankruptcy Court alleged by these Appellants is in the Court's finding that Appellants were engaged in and were guilty of common law fraud. The Bankruptcy Court used a finding of fraud to set aside transfers made by Landbank and its affiliates to Appellants and to award punitive damages against Appellants. These findings are cited as error by Appellants individually and are more appropriately addressed on this basis.

### C.

■ The Appellants allege that the Bankruptcy Court erred in determining that "points not paid" were an allowable item of damages in awarding judgment against the Appellants. The Bankruptcy Court held that "points," an additional one-time interest charge for obtaining or granting a loan, routinely failed to be assessed against members of the Runnells family, while the public was charged at a rate that reached as high as forty percent. Because the practice of not charging points to insiders was widespread and involved a substantial amount of money, the Court held that "it clearly became a fraudulent design [of the Runnells] to favor themselves," to the detriment of Landbank creditors.

Appellants argue that the Trustee's allegations with regard to lost point income are speculative and necessitate a rewriting of the loan contracts between Appellants and Landbank. The Appellants also object to the determination of lost point income by averaging points charged to members of the public.

Mr. Davis testified that it was the practice of Landbank not to charge points on loans made to members of the Runnells family and to make such loans at a lower

interest rate than that charged to the public (Tr. 99–100, 277). As a result of this practice, Landbank did not receive money which it otherwise would have received (Tr. 277). Landbank's loan policy states that "[t]here shall be no loans made to any persons or entities which have a business relationship, either directly or indirectly, with Frank E. Butler, III, William R. Runnells, Jr. or any of their corporations. There shall be no exceptions to this policy." (Tr. 223; Plaintiff's Ex. 89). Appellants were all officers or employees of Landbank and its affiliates. Accordingly, loans made to them with no payment or nominal payment of points violated Landbank's policy and deprived the company and its creditors of assets that would have been available had the loans been made to the public.

Appellants' argument that an award for "points" is impermissible on the grounds that such award requires a rewriting of the contract between Landbank and Appellants is unfounded. An action for fraud sounds in tort and will support recovery for financial damage suffered by the defrauded party. *Pigott v. Moran*, 231 Va. 76, 341 S.E. 2d 179, 182 (1986). It is the financial harm suffered by Landbank, and not the terms of the contracts involved, that determines the measure of damages.

Appellants' second argument, that the Bankruptcy Court erred in determining damages for lost point income by averaging points charged to the public (Tr. 100, 164–165, 309–311), is also unfounded. Where the existence of a loss has been established, damages may be awarded when the facts and circumstances of the case permit an intelligent and probable estimate thereof. *Worrie v. Boze*, 198 Va. 533, 95 S.E.2d 192, 200 (1956); *Gwaltney v. Reed*, 196 Va. 505, 84 S.E.2d 501, 502 (1954); *Jefferson Standard Life Insurance Co. v. Hedrick*, 181 Va. 824, 27 S.E.2d 198, 202 (1943). An averaging of points charged to the public within the year that each of the loans was made provided a reasonable estimate of income lost by Landbank for points not charged on loans made to Appellants.

**D.**

Appellants allege that the Bankruptcy Court erred in holding that "loans due" to Landbank from Appellants were allowable as an item of damage since the notes on these loans had been sold to investors.

Landbank policy expressly prohibited loans to members of the Runnells family. Accordingly, the Bankruptcy Court found that the loans were a means by which Appellants enriched themselves with Landbank assets to the detriment of the company's creditors. The Court further held that "[t]he fact that Landbank or now its trustee may not have been called upon to pay these debts is not overriding. [The] Runnells shall not have to pay twice and if [they are] eventually entitled to any credits, [they] shall have them; however, [they] can be pursued by the trustee for what [they] owe Landbank."

According to the testimony of the Trustee's accountant, Landbank guaranteed pass-through of loan payments to investors purchasing the notes from Landbank. On notes that had been insured, Landbank agreed to indemnify the insurer against any loss that might occur (Tr. 198). The Trustee introduced as evidence a compilation of investor claims against Landbank filed in the bankruptcy proceeding (Trustee's Post-Trial Brief, Attachment D).

Appellants admit that Landbank guaranteed the loans sold to investors, but argue that Landbank cannot proceed against the Appellants on a theory of suretyship or equitable subrogation because there is no evidence that the loans in question have become delinquent or that Landbank has, or ever will, pay investor claims on these loans. Furthermore, if the loans do fall delinquent and are accelerated, the investors may recover their losses through foreclosure or an action against the insurer of the loan. Appellants contend that before any recovery may be had against them individually, proof would have to be offered as to deficiencies on properties that have been foreclosed and whether or not a claim has been made to the guarantee insurance company.

The Bankruptcy Court held that the right of the Trustee to proceed against Appellants and the liability of Landbank on the notes in question are two separate issues. The Trustee was permitted to recover "loans due" from Appellants on grounds that the loans were fraudulently obtained from Landbank. This fraud claim is independent of any claim that may be asserted by investors or Landbank for collection on the notes. However, the fact that the notes had been sold to investors raised the possibility that Appellants could be sued by both Landbank and the investors on the same underlying debt. To prevent a double recovery, the Court ordered that credit against the judgment be given for any amounts obtained by the investors through foreclosure or other means.

The Trustee argues that the loans are recoverable on a theory of absolute guarantee. Appellants do not dispute the Trustee's claim that the contract between Landbank and the investors was in the nature of an absolute guarantee. Consequently, upon default, these investors may proceed directly against Landbank for recovery on the notes and need not show that a suit against Appellants, the principal debtors, would be unavailing. *United States v. Houff*, 202 F.Supp. 471, 475–476 (W.D.Va. 1962), *aff'd* 312 F.2d 6 (4th Cir.1962); *Ives v. Williams*, 143 Va. 855, 129 S.E. 675, 676 (1925); *Frieden v. Cluett, Peabody & Co., Inc.*, 142 Va. 738, 128 S.E. 61, 63 (1925). The Trustee contends that the summary of investor claims submitted to the Court below is evidence of Landbank's liability as guarantor of the loans received by Appellants.

Appellants do not deny that they received loans from Landbank, nor do they deny that the receipt of such loans violated Landbank policy. Accordingly, the Bankruptcy Court did not err in finding that the loans are recoverable on grounds that they were fraudulently obtained.

■ It would have been desirable if it had been possible to do so, for the Court to have received evidence on the exact status of each loan made by Landbank to the Appellants. This apparently was not possi-

ble because of the chaotic state of the books and records of Landbank and the other entities involved and the lack of cooperation of the Appellants. It is the duty of the Trustee under the guidance of the Bankruptcy Court to marshal the assets of the bankrupt estate and to determine the liabilities of that estate as soon as reasonably possible. Given the necessity for those prompt determinations, the difficulty with the books and records available, and the intransigence of the Appellants, the Bankruptcy Judge, in the exercise of his broad and equitable discretion, developed a practical and acceptable solution. He determined the amount of the fraudulent loans to each Appellant, gave each Appellant an opportunity to present evidence as to any credit that might have been claimed against the loan, an invitation spurned by each Appellant, and has further provided that in the event that the Trustee receives any funds resulting from foreclosures or sales of the property securing a loan, such receipts shall be credited against the judgment resulting from the loan. This solution is fair and equitable under the facts and circumstances of this case and is affirmed by this Court.

### E.

■ Finally, Appellants jointly allege that the Bankruptcy Court erred in awarding punitive damages when not pled, not included in the Final Pre-Trial Order as an issue involved, or allowable pursuant to the provisions of the Bankruptcy Code alleged and relied upon by the Trustee in this action.

The Bankruptcy Court properly noted that punitive or exemplary damages are damages imposed by way of punishment upon a wrongdoer as a warning to him and to others to prevent a repetition or commission of a similar wrong. *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271, 277 (1967); *Baker v. Marcus*, 201 Va. 905, 114 S.E.2d 617, 620 (1960); *see Norfolk & P. Traction Co. v. Miller*, 174 F. 607, 609 (4th Cir.1909). The Court found that the fraudulent actions of Appellants were "clearly aggravated," evincing a "con-

scious disregard for the rights of others," *Strickler v. Neff Trailer Sales, Inc.*, 542 F.2d 890, 892, (4th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976), citing *Gaut v. Pyles*, 212 Va. 39, 42, 181 S.E.2d 645, 647 (1971), and thereby justifying the award of exemplary damages. Specifically, the Court found:

> These Landbank defendants took, moved property around, favored themselves, and bled the company to death for their own selves' sake. If exemplary damages are not here clearly proper, there has never existed a case where they were.

> The defendants not only deny any wrongdoing, that is expected, but they show no remorse for the toll taken, monetary and human, of investors and borrowers. Except that *their goose* has been gored, they do not feel or appreciate the huge harm done to others. There exists here a greed for which they make no apology. Indeed, it is flaunted. Exemplary damages may teach no such lesson, but it must try.

Appellants claim that they were "blindsighted" by the Bankruptcy Court's award of punitive damages, particularly in light of the Court's dismissal of the Trustee's claim for treble damages pursuant to Virginia Code § 18.2–500 (Repl.Vol.1982) which provides for civil relief based on a claim of conspiracy to "willfully and maliciously" injure a business. Appellants argue that punitive damages cannot be awarded pursuant to Rules 15(b) and 54(c) of the Federal Rules of Civil Procedure because this theory of relief was not presented in the pleadings nor was the issue tried with the express or implied consent of the parties.[3] *Cioffe v. Morris*, 676 F.2d 539, 541 (11th Cir.1982); *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969). Appellants admit that fraud was a predominate issue in the case, but argue that it was never "connected with or referenced to" an award of punitive damages at any stage of the pro-

ceedings, and that Appellants would have tried the case much differently had there been any indication that the issue of punitive damages was involved.

The fallacy of Appellants' argument lies in their mischaracterization of exemplary damages as a "theory of recovery" that must be specifically alleged in the body of plaintiff's complaint and demanded in plaintiff's prayer for relief. A plaintiff's right to recovery is controlled by the allegations contained in the body of his complaint. *Compton v. Alton Steamship Co.*, 608 F.2d 96, 105–106 (4th Cir.1979). The complaint must contain a demand for judgment for the relief to which the plaintiff deems himself entitled. Fed.R.Civ.P. 8(a)(3). However, the prayer for relief does not constitute any part of the plaintiff's cause of action. 6 J. MOORE, W. TAGGART & J. WICKER, MOORE's FEDERAL PRACTICE ¶ 54.60 (2 ed. 1987). A failure to specifically plead and demand exemplary damages will not bar an award of such damages under 54(c) where the body of the complaint alleges facts sufficient to support the award. *Norfolk & P. Traction Co.*, 174 F. at 610; *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972); *Griffith Laboratories U.S.A., Inc. v. Pomper*, 607 F.Supp. 999, 1001 (S.D.N.Y. 1985); *Shore v. County of Mohave*, 472 F.Supp. 1114, 1121 (D.Ariz.1979), *modified*, 644 F.2d 1320 (9th Cir.1981); 25 C.J.S. *Damages* § 133 (1966).

The Trustee's Amended Complaint is replete with particularized allegations of fraudulent conduct as well as an allegation that these Appellants and others combined and conspired for the purpose of "willfully and maliciously" injuring Landbank and its reputation and "maliciously preventing Landbank from paying its lawful debts." The issue before this Court is whether the Bankruptcy Court erred in finding these allegations sufficient to support an award of punitive damages under Rule 54(c).

---

3. Rule 54(c) provides in relevant part that "every final judgment shall grant the relief to which the party is whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Rule 15(b) states

"[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings ...".

In Virginia, an allegation of fraud does not automatically support a claim for punitive damages. *Jordan v. Sauve,* 219 Va. 448, 247 S.E.2d 739, 741 (1978). The Virginia Supreme Court has consistently held that:

> Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiff's losses, as to warn others and to punish the wrongdoer, if he has acted *wantonly, oppressively, or with such malice as to evince a spirit of [mischief] or criminal indifference to civil obligations. Willful or wanton conduct imports knowledge and consciousness that injury will result from the act done.* [Citations omitted.]

(Emphasis added.) *Id.* citing *Giant of Virginia v. Pigg,* 207 Va. at 685–686, 152 S.E.2d at 277; *see also Sit-Set, A.G. v. Universal Jet Exchange Inc.,* 747 F.2d 921, 928 (4th Cir.1984) (interpreting Virginia law).

Under the liberal rules of federal pleading, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ.P. 8(a)(2). The statement need only be as detailed as necessary to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The Trustee's Complaint put Appellants on notice that the Trustee intended to prove at trial that Appellants' conduct in relation to Landbank rose to the level of "willful and malicious." The fact that this allegation was made in the context of a statutory conspiracy claim rather than being directly linked to claims of fraud is not determinative.

The Bankruptcy Court ruled that recovery under the conspiracy statute was barred because the statute was inapplicable to actions undertaken for mere personal gain. *Nationwide Mutual Fire Insurance Co. v. Jones,* 577 F.Supp. 968 (W.D.Va. 1984). However, the Court did find that the "willful and malicious" conduct delineated by the statute had been proven, i.e. that Appellants used Landbank for personal gain, "to enrich themselves thusly at the expense of others ... at the hurt and suffering of others. It all reflects a greed and callousness which sets them apart like the Mark of Cain sets others apart. They are known for what they have done." Because "willful and malicious" conduct was an element of the statutory claim for which Appellants presented a defense at trial, the Bankruptcy Court's award of punitive damages based on such aggravated conduct was not "clearly erroneous." [4] *Cf. Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.,* 705 F.2d 712, 716–717 (4th Cir.), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983) (lower court did not err in refusing to award statutory damages pursuant to 54(c) where statute created unusual remedy going beyond damages the law normally awards for injury alleged by plaintiff). Moreover, although Appellants claim that they would have tried the case differently had they known that punitive damages might be awarded, they fail to specify what this alternative trial tactic would have been.

Appellants' objection to the award of punitive damages is without merit, and the award of such by the Bankruptcy Court is affirmed. Objections by the Appellants as to the amount of punitive damages awarded against them will be addressed on an individual basis.

## II.

Marika Lody Runnells alleges four grounds of error in the judgment of the Bankruptcy Court:

---

**4.** As noted by Appellants, the Final Pre-Trial Order in the case below superseded the pleadings in the case. The factual contentions and issues presented in the Final Pre-Trial Order echo the Complaint's charge of willful and malicious conduct. Accordingly, the Final Pre-Trial Order also provided notice of the grounds upon which punitive damages were ultimately awarded.

(1) The Court erred in awarding judgment in the amount of $5,463,405.26 in favor of Landbank.

(2) The Court erred in granting judgment against Appellant in favor of Landbank for sums allegedly due from Mortgage Express, Inc., Runnington Investment Corporation, Property Buyers, Inc. and Richmond Equity Corporation.

(3) The Court erred in finding that Marika Lody Runnells engaged in improper preferences, fraudulent conveyances and actual fraud.

(4) The Court erred in awarding punitive damages against Marika Lody Runnells in any amount and/or in threefold the amount of alleged compensatory damages.

### A.

The first claim of error encompasses the other four and need not be specifically addressed.

The second ground of alleged error arises from the Bankruptcy Court's finding that Mrs. Runnells is personally liable for amounts owed to Landbank by Mortgage Express, Inc., Richmond Equity Corporation, Runnington Investment Corporation and Property Buyers, Inc. for the following transactions:

*Mortgage Express, Inc.*—$496,446.00 in brokerage fees improperly paid by Landbank; $27,689.00 in loans due to Landbank at the time of its bankruptcy (Tr. 52, Plaintiff's Ex. 2H, 2J).

*Runnington Investment Corporation*— $806,045.00 in improper payments received from Landbank (Tr. 91–92, 182, Plaintiff's Ex. 2C).

*Property Buyers, Inc.*—$2,124,928.00 written off by Landbank for foreclosed properties transferred to Property Buyers without consideration (Tr. 92–93, 182, Plaintiff's Ex. 2B).

*Richmond Equity Corporation*—$865,665.00 invested by Landbank in the company and $200,000.00 paid to Marika Runnells for the purchase of stock in Richmond Equity she purported to own (Tr. 83–85, Plaintiff's Ex. 2I).

Marika Lody Runnells and William R. Runnells were the owners and directors of Mortgage Express, Inc. Mrs. Runnells was also designated as the company's secretary/treasurer (Tr. 42, Plaintiff's Ex. 2A). Mrs. Runnells argues that the Bankruptcy Court erred in holding her liable for the alleged indebtedness of Mortgage Express to Landbank because the Trustee failed to offer proof: (1) that she "had anything to do with the management or running of Mortgage Express," (2) that she received any money from Mortgage Express, and (3) that the brokerage fees paid by Landbank were improper. Mrs. Runnells does not dispute the amount of the alleged debt, nor is any question raised regarding the judgment awarded for loans made to Mortgage Express by Landbank.

The purpose of piercing a corporate veil is to allow the court to look beyond the corporate entity to the persons who compose the corporation. *Lewis Trucking*, 147 S.E.2d at 753. Mrs. Runnells does not deny that she is a stockholder in Mortgage Express. The fact that she may not have been involved in the day-to-day operations of the company or received any money from it does not effect her liability for corporate debts once the corporate veil has been pierced.

This Court does not find clear error in the Bankruptcy Court's determination that brokerage fees paid by Landbank to Mortgage Express were improper. No brokerage agreement between the two companies was found to exist. There does not appear to be any record delineating the loans for which Mortgage Express was paid. The Bankruptcy Court was not required to accept a statement in Landbank's newsletter indicating that Mortgage Express generated income for Landbank as a refutation of Mr. Davis' testimony that brokerage fees were unearned and therefore improperly paid (Tr. 806).

Mrs. Runnells raises the same arguments with regard to her liability for the debts of Runnington Investment Corporation that were raised in her objections to the award of judgment against her for the debts of Mortgage Express, i.e. there is no

evidence that she was involved in the day-to-day operations of this corporation or that she received any funds for it. These arguments are unpersuasive and Mrs. Runnells may be held liable for the debts of Runnington based upon her admitted ownership interest in the company (Tr. 433).

■ According to the evidence at trial, Property Buyers was a wholly-owned subsidiary of Landbank (Tr. 228–229, 289, Defendants' Ex. 1). Marika Lody Runnells argues that the alleged indebtedness of Property Buyers is therefore an indebtedness of Landbank to itself for which she cannot be held liable. This circular argument misses the point. One of the purposes of piercing a corporate veil is to allow the creditors of the parent corporation to reach the assets held by a subsidiary. *Stone v. Eacho,* 127 F.2d 284, 288 (4th Cir.) *reh'g denied,* 128 F.2d 16 (4th Cir.), *cert. denied,* 317 U.S. 635, 63 S.Ct. 54, 87 L.Ed. 512 (1942). Upon a finding that transfers from the parent corporation were made without consideration and ultimately resulted in the insolvency of the parent, equity demands that the responsible officers/stockholders of the parent be held accountable for the debt. *See Jefferson Pilot Broadcasting v. Hilary & Hogan,* 617 F.2d 133, 136 (5th Cir.1980).

Conflicting evidence was presented at trial regarding the ownership of Richmond Equity Corporation (Tr. 37, 41, 181, 780–781, Plaintiff's Ex. 2A). The Bankruptcy Court resolved the conflict in holding that Richmond Equity was a wholly-owned subsidiary of Landbank. This finding is not clearly erroneous.

Mrs. Runnells argues that the Bankruptcy Court erred in awarding judgment against her for the indebtedness of Richmond Equity Corporation because (1) she received only $46,000.00 of the $200,000.00 credit given to her by Landbank for her stock in Richmond Equity; (2) sale of the Richmond Equity stock to Landbank was not fraudulent; (3) the Trustee never suggested at trial that damages sought against Mrs. Runnells for the indebtedness of Richmond Equity would exceed $200,-000.00; and (4) Richmond Equity is a whol-ly-owned subsidiary of Landbank, and consequently, Marika Runnells cannot be held liable for transfers between the two companies.

■ The Bankruptcy Court found that Marika Lody Runnells attempted to sell her "stock" in Richmond Equity Corporation to Landbank when, in fact, Landbank held all the stock in Richmond Equity. Mr. Davis testified that the $200,000.00 credited to Mrs. Runnells on Landbank's records for the purchase represented a noncash transaction (Tr. 325). Davis did not find any evidence that she received a cash payment in that amount, although he testified that Landbank's liability for purchase of the stock no longer appeared on its books (Tr. 326). Mr. Burke testified that based on his review of Landbank's records, Marika Runnells received approximately $46,000.00 of the $200,000.00 credited to her account (Tr. 783–785; Defendant's Ex. 13). Because the Bankruptcy Court did not expressly resolve this conflict in the evidence, the Court below will be required to review the evidence on this issue and state the facts upon which its decision was based.

■ Mrs. Runnells argues that she cannot be held liable for the $200,000.00 credited to her account for the sale of Richmond Equity stock because the sale of the stock was not fraudulent. As an officer and co-owner of Landbank, Marika Runnells knew or should have known that Landbank held the stock in Richmond Equity. Accordingly, the finding of the Bankruptcy Court was not clearly erroneous.

Mrs. Runnells' contention that the Trustee did not seek damages for $865,665.00 invested by Landbank in Richmond Equity is not supported by the record. Mr. Davis testified as to this alleged indebtedness, and counsel for Appellants specifically addressed the evidence on this issue (Tr. 83–85).

■ The argument that Mrs. Runnells cannot be held liable for the debts of Richmond Equity because it is a wholly-owned subsidiary of Landbank is unpersuasive for reasons set forth in this Court's review of Mrs. Runnells liability for the debt of Prop-

erty Buyers. Appellants admit that Richmond Equity is in bankruptcy. The record does not reveal any return to Landbank for its investment in Richmond Equity. Accordingly, Marika Lody Runnells may be held liable for a breach of her fiduciary duty to Landbank in transferring Landbank assets to Richmond Equity to the detriment of Landbank's creditors.

### B.

Mrs. Runnells alleges that the Bankruptcy Court erred in finding that she engaged in improper preferences, fraudulent conveyances and actual fraud. Although the Bankruptcy Court did not specify the statutory grounds upon which it held Marika Runnells liable for transfer from Landbank to affiliated companies and to Mrs. Runnells personally, it appears the Court below applied 11 U.S.C. § 547 and § 548 (West Supp.1987) to avoid fraudulent transfers and improper preferences made within one year of the date that Landbank filed for bankruptcy.[5]

The Bankruptcy Code also authorizes the Trustee to avoid any transfer made by the debtor that is voidable under state law by an unsecured creditor. 11 U.S.C. § 544(b) (1979). Under Virginia law, a transfer is voidable by creditors if made "with intent to delay, hinder or defraud creditors," or if made without valuable consideration. § 55–80, 81 Va.Code (Repl.Vol. 1986). State law may be utilized by the Trustee to avoid improper transactions occurring more than one year prior to the debtor's bankruptcy filing. *Havee v. Belk,* 775 F.2d 1209, 1218 (4th Cir.1985).

The Bankruptcy Court awarded the Trustee $70,360.00 for improper preferences that Mrs. Runnells received from Landbank. Appellant admits that she is liable for this amount as well as the partnership indebtedness of Lody & Company to Landbank in the amount of $157,252.88 (Appellants' Brief, p. 11).

Judgment in the amount of $361,-477.00 was awarded against Mrs. Runnells for the indebtedness of Kimberly & Company to Landbank. According to evidence in the record, the debt consisted of $43,402.00 in "undocumented loans," $40,000.00 in loan preferences, and $278,000.00 in additional preferences (Tr. 181–182). Appellant contends that the entire amount claimed due represents real estate loans made by Landbank to Kimberly & Company and

---

5. These provisions of the Bankruptcy Code state in relevant part:

§ 547 Preferences

   \*    \*    \*    \*    \*    \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of the transfer was an insider; and

   (5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under Chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

   \*    \*    \*    \*    \*    \*

§ 548 Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

   (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

   (ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

   (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

that Landbank cannot recover this amount because the notes on the loans have been sold to a third party investor. The record seems to indicate that the "loans" in question are cash amounts rather than real estate loans (Tr. 75–83). It also appears that the $278,000.00 in "additional preferences" represents the amount owing Landbank from Kimberly & Company before Kimberly began repaying the loans to reduce its indebtedness to $43,402.00 (Plaintiff's Ex. 2, p. 3, 2E). Recovery for this lesser amount has been awarded by the Bankruptcy Court. At trial, Mr. Davis testified that the total indebtedness of Kimberly & Company to Landbank was $83,402.00 (Tr. 83). The Final Pre–Trial Order in the proceeding below states that Kimberly & Company is liable to Landbank in the amount of $43,402.00 for loans and $158,000.00 for preferences it received from Landbank in violation of 11 U.S.C. § 547 (Plaintiff's factual contentions # 12).

The basis upon which the Bankruptcy Court determined the indebtedness of Kimberly & Company to Landbank is unclear. Accordingly, the Bankruptcy Court will be required to review the evidence and make specific findings of fact with regard to the transfers in question. If the evidence from the record proves insufficient, the Court below may require the parties to submit additional evidence on this issue.

The Bankruptcy Court held Mrs. Runnells liable for transfers made by Landbank to Mortgage Express, Inc., Runnington Investment Corporation, Property Buyers, Inc. and Richmond Equity based upon a finding that such transfers were fraudulent. Both the Virginia statute and the Bankruptcy Code provision allowing for the avoidance of fraudulent transfers require a finding of actual intent to defraud or an intent to hinder or delay creditors.

■ Mrs. Runnells argues that "actual" intent to defraud Landbank creditors through these transactions was not shown. She contends that the allegation of fraud is negated by the showing that (1) transfers were adequately documented, (2) there existed a *bona fide* intention to continue business, and (3) consideration passing to the debtor was adequate and fair. Appellant asserts, without any citation to the record, that documentation was presented "of almost all of the transfers the Trustee seeks to set aside," and that "equivalent value or consideration is shown either by salaries earned or consideration paid." (Appellants' Brief, p. 26). Mrs. Runnells argues that all of her efforts were directed to solving Landbank's problems, as evidenced by the fact that she hired accountants and managers to study Landbank's management problems, repaid over $600,000.00 in loans on behalf of herself and her husband in the last year of Landbank's operation, and paid the filing fee for Landbank's bankruptcy petition.

■ The Bankruptcy Court's determination as to the existence of fraudulent intent is entitled to great weight. *In re Prestige Spring Corp.*, 628 F.2d 840, 842 (4th Cir.1980). After citing numerous "indicia of culpability" the Court below held that Mrs. Runnells, "being in the center of a stew with knowledge, with nothing at arms length and as a conductor through which the manipulations of ninety entities passed is clearly a fraud." The Court defined fraud as "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." The arguments raised here by Appellant as to her good intentions in the operation of Landbank were addressed by the Bankruptcy Court and dismissed as unconvincing. The Bankruptcy Court's finding that Mrs. Runnells could be held liable for fraudulent transfers made by Landbank to affiliated companies in which she also held an ownership interest is not clearly erroneous.

■ Judgement was also awarded against Mrs. Runnells for loans which she personally received from Landbank. Marika Lody Runnells served as president of Landbank. The receipt of loans by Mrs. Runnells violated Landbank's policy and were clearly fraudulent.

### C.

Finally, Marika Lody Runnells alleges that the Bankruptcy Court erred in award-

ing punitive damages against her in any amount and/or in threefold the amount of compensatory damages. The Court has addressed Appellant's argument that punitive damages cannot be awarded because they were not pled or demanded in the Trustee's Complaint or designated as an issue in the Final Pre–Trial Order. Mrs. Runnells also argues that the only provision of the Bankruptcy Code authorizing the award of punitive damages is Section 303, which is inapplicable to the present case.

█ Imposition of punitive damages lies within the discretion of the bankruptcy court. *In re Criswell,* 52 B.R. 184, 206 (Bkrtcy.E.D.Va.1984). Where the Bankruptcy Code does not specifically provide for an award of punitive damages, the Court may award such by application of state law. *Id.* at 205. Under Virginia law, there is no fixed standard for the measure of exemplary or punitive damages and the amount of the award is largely within the discretion of the trier of fact. *Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192, 201 (1956). However, as noted by the Bankruptcy Court, exemplary damages must bear some reasonable proportion to the actual damages shown. *Gazette, Inc. v. Harris,* 229 Va. 1, 325 S.E.2d 713, 747, *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985); *Stubbs v. Cowden,* 179 Va. 190, 18 S.E.2d 275, 280 (1942).

█ As previously discussed, an award of exemplary damages for fraud under Virginia law requires a finding by the trial court of aggravated conduct, i.e. conduct which is willful or wanton or that which is undertaken with a conscious disregard for the rights of others. The Bankruptcy Court made a general finding that Appellants used Landbank and its affiliates for their own personal gain, and that they showed no remorse for the losses inflicted upon investors and borrowers. Additional findings of fact were made by the Court with regard to the knowingly fraudulent conduct of Marika Lody Runnells in Landbank's operation.

█ The Bankruptcy Court, as trier of fact, is uniquely able to judge the demeanor and credibility of witnesses as a means of assessing the nature of their alleged conduct. Accordingly, this Court does not find clear error in the Bankruptcy Court's determination that Marika Lody Runnells engaged in aggravated conduct justifying an award of punitive damages. Moreover, based upon the extensive nature of Landbank's operation, the millions of dollars which the Runnells family received from the company and the degree of harm suffered by investors and borrowers of Landbank, this Court finds no error in an award of punitive damages at threefold the amount of actual damages awarded.

### III.

Stephen Z. Runnells, son of Marika Lody Runnells, alleges that the Bankruptcy Court erred in: (1) awarding judgment against him for actual damages in the amount of $512,132.17; (2) awarding damages in the amount of $1,069.40 stemming from the pinball machine and pinball repairs; and (3) awarding punitive damages against him in any amount and/or in threefold the amount of the alleged actual damages.

### A.

█ Stephen Runnells admits that he is liable to the Trustee in the amount of $157,-253.00 for the partnership indebtedness of Lody & Company to Landbank. He further concedes that he may be liable for $25,100.00 received from Landbank if such amount is found not to have been earned (Appellants' Brief, p. 18). Obviously, in awarding judgment for the latter amount, the Bankruptcy Court found that the money had not been earned. This finding is not clearly erroneous in view of the testimony of Stephen that the alleged debt consisted of a $10,000.00 check written on Landbank's account by William R. Runnells, Jr., Stephen's stepfather, to be used as a down payment on a sports car (Tr. 536) and a $15,100.00 "gift" from Marika Lody Runnells to her son (Tr. 538). Neither amount was reported by Stephen as income on his 1984 income tax return (Tr. 537–538).

The Bankruptcy Court awarded the Trustee $266,622.77 for the outstanding balance on loans received by Stephen from Landbank, and $62,087.00 for points which Stephen failed to pay on these loans. Appellant's argument that Landbank cannot collect on the loans because it is not the holder of the notes on the loans has previously been addressed. Similarly, the Court has found that "lost points" could be awarded by the Bankruptcy Court as an element of damages for the fraud involved in receipt of the loans. The evidence at trial indicated that Stephen Runnells was an employee of Landbank (Tr. 504). Accordingly, real estate loans received by Stephen violated Landbank's policy prohibiting loans "... to any persons or entities which have a business relationship, either directly or indirectly, with Frank E. Butler, III, William R. Runnells, Jr. or any of their corporations ..." (Tr. 223; Plaintiff's Ex. 89).

■■■ The argument that Stephen should not be held liable for the loans in question because he was responsible for payments on this indebtedness is not supported by the record. According to his own testimony, Stephen Runnells did not invest any of his own money in the property at 1237 People's Way nor did he make payments on the $83,000.00 loan secured by the property (Tr. 521–522). Similarly, he made no investment in the property at 1174 Indian Avenue and made only nominal payments on the $51,000.00 loan on the property before the payments were taken over by his mother (Tr. 522–523). He did not invest any funds in the property at 305 Discovery Road and made no payments on the $134,010.50 loan used to purchase that property (Tr. 524–525). The evidence indicates that Stephen Runnells could not afford the monthly payments on these loans based on his 1984 income (Tr. 233). Accordingly, the Bankruptcy Court did not err in finding that Landbank could recover the unpaid balance on the loans in the absence of evidence that the holders of the notes had obtained satisfaction on the debt.

**B.**

■■■ The second error of the Bankruptcy Court cited by Stephen Runnells is the Court's award of damages for a pinball machine and repairs thereto. The Court found that "[a] pinball machine is but a flake in the crust, but the Court finds it clearly in [Stephen's] name, again, courtesy of Landbank's funds. We see once more the nature of the excuses with the offering that he was merely acting for his father." Appellant argues that he cannot be held liable for this amount because he claims no ownership interest in the pinball machine.

The evidence at trial indicated that Stephen Runnells ordered a pinball machine from Playtime Sales, Inc. and that the machine was later repaired by Playtime. Invoices from the company reflect that the machine was supplied to 1705 Catherine Court, the home of Marika and William R. Runnells, Jr. Payment for the machine and repairs were made with a check from William–Robert & Company. Stephen testified that he ordered the machine for his father, and that, to his knowledge, no pinball machine was ever "located or involved with" William–Robert & Company (Tr. 540–541). The records of William–Robert & Company state that payment on the Playtime Sales invoices was for "machine for office William–Robert" (Plaintiff's Ex. 48).

As to William–Robert & Company, the Bankruptcy Court found:

> William–Robert & Company was, the better weight of the evidence shows, a general partnership of William R. Runnells, Jr. and John E. Runnells, brothers. It pretended, at times, to be a limited partnership. We conclude it flipped back and forth as convenience required. Indeed, it was the chief trocar for taking money, withdrawals, from Landbank. Unbelievably, it was paid for 4,461 appraisals when the evidence is really uncontroverted that the appraisals were a formality, a sham. Some were signed in blank, others were never made and most were made by simply riding by the house.

From the Bankruptcy Court's finding that William–Robert & Company was a sham corporation used to divert Landbank

funds, it follows from the record that Stephen Runnells' knowing use of William–Robert & Company funds to purchase and repair a pinball machine was fraudulent. The fact that Stephen may not have an ownership interest in the machine does not mitigate the fraud. The Bankruptcy Court's determination that Stephen Runnells is liable for amounts expended on the pinball machine is not clearly erroneous.

### C.

Finally, Stephen Runnells alleges that the Bankruptcy Court erred in awarding punitive or exemplary damages against him. The Court below held that Stephen Runnells was "a smart insider, intent upon making the most of it," and that his knowledge and involvement in the fraudulent operation of Landbank was considerable. By way of example, the Court noted that Stephen (1) founded two corporations; (2) billed for property appraisals by his father that he knew were not performed; (3) had knowledge of the fact that property was being placed in his name without consideration; (4) received six or eight automobiles; (5) was a general partner in Lody & Company; and (6) accepted many large and nonbusiness related gifts. These findings are not disputed. The Court further held that gifts of automobiles and other items from Landbank were not *bona fide* in that Stephen knew that he was being enriched with Landbank assets. Furthermore, the Court stated that it did not believe Stephen's proclaimed unawareness of the fact that property was being transferred to him for the purpose of hiding it (presumably from Landbank's creditors).

Based on the foregoing factual findings, the Bankruptcy Court did not err in holding that Stephen Runnells engaged in a pattern of aggravated conduct sufficient to support an award of punitive damages. For reasons outlined in this Court's review of damages awarded against Marika Runnells, no error was committed by the Bankruptcy Court in awarding exemplary damages against Stephen at threefold the amount of actual damages.

### IV.

Lucille Runnells, mother of William R. Runnells, Jr., alleges the following grounds of error in the Order of the Bankruptcy Court:

(1) The Court erred in awarding judgment against Lucille Runnells in favor of Landbank for actual damages in the sum of $64,806.15.

(2) The Court erred in finding that Lucille Runnells engaged in improper preferences, fraudulent conveyances and actual fraud.

(3) The Court erred in awarding punitive damages against Lucille Runnells in any amount and/or in threefold the alleged actual damages.

(4) The Court erred in granting judgment in the amount of $36,195.15 for alleged profit made on the sale of the Elbow Road property.

(5) The Court erred in finding that $28,611.00 was the value of the 1983 Jaguar automobile of Lucille Runnells.

### A.

The Bankruptcy Court's award of $64,806.15 in actual damages against Mrs. Runnells included an award of $28,611.00 representing the value of a Jaguar she received from Landbank, and $36,195.15 for improper profits received by Mrs. Runnells from the sale of property she acquired on Elbow Road. The Court held:

Her Jaguar she enjoyed for several years before its transfer to her in 1985 and coming at a time of insolvency, etc. it is an unlawful transfer.

The Court is of the opinion for reasons advanced by defendant's counsel that the transfer of the Birdneck Commons condominium was for good value.

The same cannot be said for the forty-one acres on Elbow Road. She was an insider and this transaction with Frank Butler netted her a handsome profit in but a few days. The Court believes this was just another move on the gigantic chess board to shift the property around. Surely, foreclosure threatened, but Landbank, and now its fleeced creditors, are

entitled to any profit and not Mrs. Runnells.

Appellant argues that the award for the value of the Jaguar is improper because the car was part of Mrs. Runnells' compensation for services she provided to Landbank. Furthermore, she contends that the Court erred in using the Trustee's valuation of the vehicle since, as noted by the Court at trial, the sales receipt presented by the Trustee was not for the Jaguar received by Lucille Runnells.

The Bankruptcy Code provides for the avoidance of transfers made by the debtor within one year prior to filing for bankruptcy if the transfer was made "with actual intent to hinder, delay or defraud" creditors or if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" and was insolvent at the time the transfer was made. 11 U.S.C. § 548 (a)(1)(2)(A)(B)(i) (West Supp.1987). The transfer of title to the Jaguar from Landbank to Lucille Runnells in 1985 was properly found to be voidable by the Bankruptcy Court under this provision of the Code. Although the evidence indicated that Lucille Runnells was employed by Landbank and/or its affiliates, the Court below did not err in finding that the Jaguar was not compensation for Mrs. Runnells' employment. The evidence at trial was that Mrs. Runnells received $4,300.00 for her employment with Landbank in 1982; $6,600.00 in base salary and a $2,000.00 bonus in 1983; and $6,600.00 in salary and a $1,000.00 bonus in 1984. In 1985, she received $3,300.00 in salary and the "bonus" of a Jaguar she estimated to be worth $20,000.00 (Tr. 611–615).

It is argued by Mrs. Runnells that the "appropriate remedy" with regard to the Jaguar would be to order its return to the Trustee. Additionally, she contends that the maximum monetary award for the car should be $20,000.00, Mrs. Runnells' valuation of the vehicle on her 1985 tax return.

Mrs. Runnells does not dispute the fact that Landbank paid for the Jaguar in 1983 and that she exercised dominion and control over the vehicle from the time of its purchase. The financial damage suffered by Landbank as a consequence of Lucille Runnells' receipt of the Jaguar is the amount expended on the purchase of the automobile, an amount which is now unavailable to Landbank creditors. Accordingly, the Bankruptcy Court did not err in awarding a monetary judgment based on the value of the car at the time of purchase, rather than Appellant's valuation of its worth in 1985. However, because the sales invoice presented by the Trustee was not for the Jaguar received by Lucille Runnells and no finding was made by the Bankruptcy Court that the car described in the invoice was similar to that received by Mrs. Runnells, the Bankruptcy Court will be required to review the evidence, taking additional evidence as needed, to establish the purchase price of the Jaguar in question.

B.

Mrs. Runnells argues that the award of $36,195.15 for profits which she received on the sale of the Elbow Road property was improper because (1) she only realized a profit of $17,528.00, and (2) adequate consideration was given by Mrs. Runnells when she acquired the property from William–Robert & Company.

Because Appellants' brief does not indicate how a profit figure of $17,528.00 was determined, the Court has no basis upon which to examine this computation. The revised seller's statement of September 19, 1985 indicates an amount of $86,866.69 "previously paid" to Lucille Runnells and $9,058.46 "balance paid herewith," for a total of $95,925.15 (Plaintiff's Ex. 38). Subtracting from this amount the $59,730.00 that Lucille Runnells invested in the property leaves a balance of $36,915.15, the measure of profits set forth by the Trustee. The Bankruptcy Court did not err in accepting this figure.

The argument that "adequate consideration" was given by Mrs. Runnells for the property is not credible. As previously noted, the Bankruptcy Court found that William–Robert & Company was a sham corporation used to divert funds from

Landbank. Lucille Runnells acquired the property from William–Robert & Company for a personal investment just under $60,-000.00. Two weeks later, and two days after Landbank filed for bankruptcy, Lucille sold the property to Frank E. Butler, III and Richard E. Payne at a substantial profit (Tr. 620–622, Plaintiff's Ex. 38). Mr. Butler is a cofounder of Landbank. Based on these facts, the Court below did not err in finding that the transfer of the property from William–Robert & Company/Landbank to Lucille Runnells was fraudulent and that profits received by Mrs. Runnells properly belong to Landbank and its creditors.

### C.

■ Finally, this Court does not find an award of punitive damages against Lucille Runnells in threefold the amount of actual damages to be clearly erroneous. The Bankruptcy Court found that Lucille Runnells "enjoyed for several years" the Jaguar purchased for her by Landbank. By her argument that the car was received as compensation for services rendered, Mrs. Runnells made clear her knowledge that Landbank was the source of funds for the car purchase. In addition, the transfer of the Elbow Road property to Lucille and its profitable sale to Mr. Butler could properly have been interpreted by the Bankruptcy Court as "another move on the gigantic chess board to shift property around," particularly in view of the fact that the transaction coincided with Landbank's filing for bankruptcy. Although Mrs. Lucille Runnells may not have been as involved in the operation of Landbank and its affiliates as some of the other Appellants, the Court below did not commit clear error in holding that Lucille Runnells engaged in conduct evincing a "conscious disregard" for the right of Landbank creditors to assets she wrongfully received from the company. The Court further finds that the amount of exemplary damages is not clearly erroneous.

### V.

Robert D. Runnells, son of William and Marika Runnells, alleges that the Bankruptcy Court erred in awarding judgment against him in the amount of $12,164.00 for "points not paid" on a mortgage loan he received from Landbank and that the Court erred in awarding punitive damages against him.

Mr. Davis testified that Robert Runnells was indebted to Landbank in the amount of $62,748.00, the outstanding balance on a mortgage loan received from Landbank for the purchase of residential property at 1102 Indian Avenue (Tr. 98, Plaintiff's Ex. 2 O, p. 3). Robert cosigned the loan with his brother Stephen (Tr. 329, 527, 599). The Trustee also sought judgment against Robert on the loan he jointly received with Stephen for the purchase of property at 1237 People's Way (Trustee's Post–Trial Brief, p. 29).

The Bankruptcy Court held that "the evidence will not support any loans due Landbank by Robert, but as co-owner or co-obligor with Stephen Runnells, Robert [sic] must surrender or convey any interest on any property so held." The Court awarded judgment against Stephen Runnells for the loan secured by the People's Way property. The Court awarded judgment against Stephen Runnells for the loan secured by the People's Way property. The Court awarded judgment against Robert for "points not paid" on the loan used to purchase the Indian Avenue property.

■ No error is alleged in the Bankruptcy Court's determination that Robert Runnells is not liable for the loan received from Landbank. The record indicates that Robert paid no points on the loan for the Indian Avenue property (Plaintiff's Ex. 2Q, p. 7). Because the public was charged points on loans made by Landbank, the Trustee is entitled to collect "lost points" from Robert, and the Bankruptcy Court did not err in so holding. With regard to exemplary damages, however, the Bankruptcy Court has failed to make specific factual findings from which it determined that Robert Runnells engaged in conduct that would justify such damages. The Bankruptcy Court is directed to make such a finding so that this Court may have a basis

upon which to review the lower court's decision.

## VI.

John Edward Runnells, brother of William R. Runnells, Jr., cites the following grounds of error in the Order of the Bankruptcy Court:

(1) The Court erred in determining that John Edward Runnells owed $1,175,663.00 to the Trustee for loans made through Landbank and endorsed by John Edward Runnells.

(2) The Court erred in determining that John Edward is indebted to the Trustee in the amount of $470,446.00 for "points not paid" on loans made through Landbank.

(3) The Court erred in determining that John Edward Runnells is indebted to the Trustee in the amount of $8,000.00 for an alleged improper salary paid to him by Landbank.

(4) The Court erred in determining that John Edward Runnells is indebted to the Trustee in the amount of $4,889,153.00 because of his relationship with the following companies:

Property Buyers, Inc.
William Robert and Company
John Edward Properties, Inc.
Runnington Investment Corporation.

(5) The Court erred in determining that John Edward Runnells is indebted to the Trustee in the amount of $20,166.30 as a result of the sale of certain property in Lago Mar, Virginia Beach, Virginia, to a Mr. and Mrs. Krebec.

(6) The Court erred in awarding the Trustee $19,802,784.90 in punitive damages against John Edward Runnells.

(7) The Court erred in awarding the Trustee a judgment against John Edward Runnells in the amount of $26,253,713.20.

## A.

The Bankruptcy Court found John Edward Runnells liable in the amount of $1,175,663.00 for the outstanding balance on real estate loans he received from Landbank. This Appellant advances the same argument raised by the other Appellants, i.e., that no liability exists on these loans because the notes on the loans have been sold to investors. John Runnells also argues that "lost points" on these loans are not recoverable by Landbank. The Bankruptcy Court's award of judgment against John Runnells for loans due and points not paid is not in error for the reasons previously set forth.

## B.

■ With regard to the award of judgment in the amount of $8,000.00, Appellant admits that "if the Court is satisfied that John Runnells received $8,000.00 from Landbank in 1985 and that John did not work for Landbank in 1985, this payment would be voidable." (Appellants' Brief, p. 13). Mr. Runnells maintains that copies of payroll records from Landbank, as presented by the Trustee at trial, are insufficient proof that any payment had been made to John Runnells.

The Bankruptcy Court stated that it was "of the opinion after going through the records again and again and after reviewing the testimony that no work was performed for Landbank; therefore, the $8,000.00 paid is part of the fraudulent taking." This finding is not clearly erroneous. In response to an inquiry by the Bankruptcy Court, John Runnells testified that he thought that he last worked for Landbank in December of 1984 (Tr. 501–502). In response to questioning by counsel for the Trustee, Mr. Runnells could not recall performing work for Landbank in 1985 (Tr. 468).

Appellant's reliance on *In re: Bob Grissett Golf Shoppes, Inc.,* 34 B.R. 320, 322 (Bkrtcy.E.D.Va.1983) for the proposition that the Trustee has failed to prove a transfer of Landbank's property because a cancelled check in the amount of $8,000.00 to John E. Runnells has not been produced, is not well-founded. That case holds that a transfer of property by check occurs when the debtor's bank ultimately honors the check. In the present case, John Runnells appears to have admitted at trial that he received the payment in question:

Q. Okay. Do you recall specifically doing anything with Landbank or for Landbank in 1985?

A. I was paid, so apparently I did something, but I can't recall what it was. (Tr. 468)

Since John Runnells did not deny receiving $8,000.00 from Landbank in 1985, it was not necessary for the Trustee to offer further evidence as to this claim.

### C.

The Bankruptcy Court held that John E. Runnells was "involved in" John Edward Properties, Inc., Property Buyers, Inc., Property Holding Corporation, Prime Financial Corporation, William–Robert & Company and Runnington Investment Corporation. The Court further held that "as set forth above under the criteria for piercing the corporate veil, and coupled with the definition of fraud being used, these were but conduits, hiding places, supply lines and covers for the entire enterprise. They were not free-standing entities." With the exception of Prime Mortgage, the Court found John Runnells liable for amounts owed by each of these companies to Landbank. The Bankruptcy Court's findings are not clearly erroneous.

■ *Property Buyers* —John Runnells was a vice president of Property Buyers (Tr. 246). The Bankruptcy Court held John Runnells and Marika Runnells jointly and severally liable in the amount of $2,124,198.00, the value of foreclosed real estate transferred from Landbank to Property Buyers without consideration. Mr. Davis testified that according to Landbank's records, a great deal of the property that Property Buyers acquired from Landbank was subsequently transferred from Property Buyers to Property Holding Corporation, a company controlled by John Runnells (Tr. 214–215, 276, 489). Property Holding Corporation assets were used by John Runnells to make payments on real estate loans that he personally received from Landbank (Tr. 474–476). The Bankruptcy Court did not err in finding that this Appellant, as an officer of Property Buyers, engaged in a fraudulent scheme to divert Landbank assets through Property Buyers and ultimately to his own use.

■ *William–Robert & Company* —William–Robert & Company was a partnership venture of John Runnells and William R. Runnells, Jr. The Bankruptcy Court awarded judgment against John Runnells in the amount of $1,401,620.00 based on his dealings with William–Robert & Company. This amount includes $1,057,652.00 in appraisal fees received by the company from Landbank; $266,216.00 for loan preferences within one year of Landbank's bankruptcy; and $77,812.00 in loans owed to Landbank (Tr. 59). On appeal, John Runnells does not dispute the nature or amount of William–Robert's indebtedness to Landbank, but argues that he cannot be held liable for the debts of the company because of his status as a limited partner in the business venture.

The evidence indicates that William–Robert & Company was founded in 1982 as a general partnership by William R. Runnells, Jr. and John E. Runnells (Tr. 69–70, Plaintiff's Ex. 20). In April of 1983, a certificate of limited partnership was executed by the parties (Plaintiff's Ex. 20). Although John Runnells had a ten percent interest in the company, he could not recall having made any capital investment in it (Tr. 167, 466–467). The company was treated as a limited partnership for tax purposes in 1984 (Tr. 267–270). Based on this evidence and a statement by the Trustee that John Runnells is "arguably insulated from liability due to the limited partnership" (Trustee's Post–Trial Brief, p. 52), the Appellant claims that his liability for the debts of William–Robert & Company has not been established.

Under Virginia law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." § 50–6(1), Va.Code (Repl. Vol.1986). The receipt by a person of a share of the profits of a business is prima facia evidence that he is a partner in the business. § 50–7(4), Va.Code (Repl.Vol. 1986). A partner's interest in the partnership is his share of the profits and surplus. § 50–26, Va.Code (Repl.Vol.1986). All

partners are jointly and severally liable for losses suffered by third parties as a result of any partner's wrongful act or breach of trust. §§ 50–13, 50–14, 50–15, Va.Code (Repl.Vol.1986)

In the present case, John Runnells does not dispute that he was a partner in William–Robert & Company. The fact that he received a share of the profits from the company indicates that a partnership arrangement did exist (Tr. 268–269, Plaintiff's Ex. 111). Although there is evidence in the record in the form of a tax return showing that William–Robert & Company was treated as a limited partnership, this evidence is not determinative. In Virginia, the formation of a limited partnership requires the filing of a certificate of limited partnership with the State Corporation Commission. § 50–73.11(B), Va.Code (Repl.Vol.1986). A writing purporting to be a certificate of limited partnership produced at trial was found among Landbank's records (Tr. 58). No evidence was produced indicating that the requisite filing with the State Corporation Commission had been made. Accordingly, the Bankruptcy Court did not clearly err in holding that William–Robert & Company was a general partnership and that John E. Runnells could be held liable for amounts owed by that company to Landbank.

■ *John Edward Properties, Inc.—* The Bankruptcy Court held that John E. Runnells was "the uncontested sole stockholder and officer of this entity, another Landbank alter ego." The record shows that John Edward Properties was incorporated in 1982 with John E. Runnells listed as sole director (Tr. 759). Mr. Runnells testified that he was the president and owner of the corporation, but that he could not recall his capital investment in the company (Tr. 468–469). He further stated that as far as he knew, he was the sole stockholder in the company (Tr. 493). The Bankruptcy Court held that John Edward Properties, Inc. was indebted to Landbank in the amount of $556,500.00 for fraudulent transfers and insider preferences. By piercing the corporate veil of the company,

John E. Runnells was held personally liable for this amount.

The Trustee's accountant found no business records of John Edward Properties, Inc. among Landbank's records (Tr. 29, 238). Counsel for John E. Runnells and John Edward Properties, Inc. stated at trial that no check register for the company had been located (Tr. 61). Landbank's records did show that John Edward Properties, Inc. received $23,500.00 from Landbank within one year of the latter's filing for bankruptcy (Tr. 88–89, Plaintiff's Ex. 2G). According to the testimony of Mr. Davis, John Edward Properties also received $533,-000.00 in insider preferences from Landbank.

The record with regard to John Edward Properties, Inc. is characterized by a lack of evidence as to (1) the existence of any corporate records, (2) capitalization for the company, and (3) the observation of any corporate formalities. Of particular significance is John E. Runnells' proclaimed lack of knowledge as to the basic structure and operation of the company. Although he stated at trial that such lack of knowledge was due to the failure of the Trustee to make records available to him, the Bankruptcy Court established that the records were made available (Tr. 468–472). Based upon this evidence, the Bankruptcy Court did not err in piercing the corporate veil of John Edward Properties, Inc. and holding John E. Runnells liable for the debts of that corporation.

■ *Runnington Investment Corporation*—The Bankruptcy Court awarded judgment against John E. Runnells in the amount of $806,045.00 based on his dealings with Runnington Investment Corporation. Mr. Davis testified that he had seen documentation indicating that Runnington Investment Corporation was owned by William R. Runnells, Jr. and John E. Runnells (Tr. 248). The ownership of the company is not specified in the accountant's report, although the report does indicate that John E. Runnells was president of Runnington Homeowners Association, Inc. (Plaintiff's Ex. 2A). John Runnells testified that he had no known interest in Runnington In-

vestment Corporation (Tr. 485). Because no documentary evidence was offered to contradict the position of either Mr. Runnells or Mr. Davis, the Bankruptcy Court did not err in accepting the Trustee's contention that John Runnells was a stockholder in Runnington Investment Corporation. Accordingly, Mr. Runnells may be held liable for the indebtedness of that company to Landbank.

### D.

▮ The fifth error cited by this Appellant is in the Bankruptcy Court's finding that he is indebted to the Trustee in the amount of $20,166.30 as a result of the sale of a piece of real estate in Lago Mar, Virginia Beach, Virginia to a Mr. and Mrs. Krebec. The Bankruptcy Court held that "[t]he Krebec property in Virginia Beach's Lago Mar netted him $20,166.30 unjustly when he had no interest in it. This the evidence proves clearly and convincingly." John Runnells admitted that the Runnington Investment Corporation was the seller of the property. He does not deny that a check representing payment for the sale names him as payee, but argues that he does not remember receiving the check and that the Trustee has failed to present evidence that the check was honored by the payor's bank (Tr. 487).

The Bankruptcy Court properly noted at trial that presentation of the cancelled check by the Trustee would have impeached Mr. Runnells' testimony that he never received payment on the check (Tr. 488). The check was not produced, and the Trustee failed to explain why he did not produce it. Absent such evidence, this Court determines that the Bankruptcy Court has failed to establish by an appropriate finding of fact John Runnells' liability for the sum stated. The Bankruptcy Court is therefore directed to review the present evidence, to reopen the evidence if necessary, and to make an appropriate finding of fact on this issue.

### E.

▮ Appellant argues that the Bankruptcy Court erred in awarding the Trustee punitive damages against him in the amount of $19,802,784.90, threefold the amount of actual damages. The arguments raised by John Runnells have previously been addressed in a review of punitive damages awarded against the other Appellants. Based upon the extent of the involvement of John E. Runnells in the fraudulent operation of Landbank and its affiliates, and the lower court's finding that this Appellant failed to provide any explanation for his actions, the Bankruptcy Court's award of exemplary damages is not clearly erroneous.

### VII.

The following grounds of error are cited by John Edward Properties, Inc.:

(1) The Bankruptcy Court erred in determining that John Edward Properties, Inc. is indebted to the Trustee in the amount of $23,500.00 for alleged loans obtained from Landbank.

(2) The Court erred in determining that John Edward Properties, Inc. is indebted to the Trustee in the amount of $533,000.00 for alleged preference transfers pursuant to 11 U.S.C. § 547.

(3) The Court erred in determining that John Edward Properties, Inc. was an insider as defined in 11 U.S.C. (1982 Ed.Supp. II) § 101(28).

(4) The Court erred in determining that the alleged preference transfers to John Edward Properties, Inc. were not made in the ordinary course of business pursuant to 11 U.S.C. § 547(c).

(5) The Court erred in awarding judgment to the Trustee against John Edward Properties, Inc. in the amount of $556,-500.00.

According to the report prepared by the Trustee's accountant, John Edward Properties, Inc. was indebted to Landbank in the amount of $23,500.00 for monies it received from Landbank in 1985. The accountant also found preferences in the form of loan repayments by Landbank to John Edward Properties, Inc. in the amount of $533,-000.00 (Tr. 88–89, Plaintiff's Ex. 2G).

Appellants' brief does not specifically address the $23,500.00 debt for cash loans received by John Edward Properties, Inc. from Landbank. This amount represents a balance due from John Edward Properties to Landbank following a series of loans between the two companies (Plaintiff's Ex. 2, p. 3). The Bankruptcy Court held that the Trustee would not be required to produce cancelled checks as evidence of the transactions between Landbank and John Edward Properties. The Court held that "Landbank's own records reflect these, records made contemporaneously with the event." In view of the fact that the Appellant has not denied the existence of this debt and that this Appellant was unable to produce any of its own records, the Bankruptcy Court did not err in holding that Landbank's records provided sufficient basis for determining this indebtedness of John Edward Properties to Landbank.

The Bankruptcy Court held that $533,000.00 was repaid by Landbank to John Edward Properties for an antecedent debt within one year of Landbank's filing for bankruptcy. The Court further held that John Edward Properties, Inc. was an "insider" as defined by 11 U.S.C. (1982 Ed. Supp. II) § 101(28) and that the transfer in question was therefore voidable by the Trustee under 11 U.S.C. § 547.

■ Appellant argues that the Bankruptcy Court's holding is in error because (1) John Edward Properties, Inc. is not an "insider" of Landbank within the meaning of 11 U.S.C. § 547(b)(4)(B); and (2) the alleged preference transfers were made in the ordinary course of business as provided in 11 U.S.C. § 547(c). This Appellant also argues that the Bankruptcy Court erred in finding that $533,000.00 was the amount loaned to, and ultimately repaid by, Landbank within the preference period.

Under the Bankruptcy Code, an "insider" of a corporate debtor includes (i) a director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer or person in control of the debtor. 11 U.S.C. § 101(30)(B) (West Supp. 1987), formerly 11 U.S.C. (1982 Ed.Supp. II) § 101(28)(B). The Bankruptcy Court held that John Edward Properties, Inc. was the alter ego of John E. Runnells. This Court has determined that such finding was not clearly erroneous. John E. Runnells is the brother of William R. Runnells, Jr. and clearly falls within the definition of an insider as contained in subsection (30)(B)(vi) of the statute. Accordingly, the Court below did not err in holding that John Edward Properties, Inc. was an insider for purposes of permitting the Trustee to avoid loan repayments made by Landbank to John Edward Properties. 11 U.S.C. § 547(b)(4)(B).

■ Mr. Runnells contends that the loan repayments made by Landbank were transfers within the ordinary course of business and consequently, are not voidable by the Trustee. 11 U.S.C. § 547(c). The Bankruptcy Court addressed this argument holding that "[t]he Bankruptcy Code at § 547(c) provides for exceptions to preferences and one of these is if made in the ordinary course of business. The defendant would escape by technicalities that apply to honest people, not wrongdoers as here." Appellants reliance upon the testimony of Mr. Davis to establish that the loan repayments were made in the ordinary course of business is misplaced. Mr. Davis stated only that no note was found to indicate how the $533,000.00 was to be repaid by Landbank and that it was not Landbank's general practice to draft notes or written agreements for loans between Landbank and its affiliates (Tr. 242–243). Because Appellant has failed to cite any evidence from the record indicating that Landbank's repayments on loans made to it by John Edward Properties were transfers made in the ordinary course of business, the Bankruptcy Court's unwillingness to accept this defense was not clearly erroneous.

The record before this Court supports the Bankruptcy Court's finding that $533,000.00 was paid to John Edward Properties, Inc. by Landbank within one year within the latter's bankruptcy filing and

that this transfer may be avoided by the Trustee pursuant to 11 U.S.C. § 547(b)(4)(B). The relevance of Appellant's contention that $700,000.00 was the actual amount of the loan to Landbank by John Edward Properties is not apparent to this Court. However, the record does not support this assertion. John Runnells testified that $700,000.00 was the amount of the loan, but admitted that he had no documentation to support this statement.

### VIII.

In conclusion, the Court notes that the parties on appeal have been remiss in failing to adequately support their arguments by citations to the record and to legal authority. Consequently, this Court's review of the judgment below has been particularly difficult.

Pursuant to Bankr.Code Rule 8013 (1984), the following issues are remanded to the Bankruptcy Court for more specific factual findings based upon the record and a reopening of the case to obtain further evidence as necessary:

(1) Amount recoverable from Marika Lody Runnells for sale of her Richmond Equity Corporation stock to Landbank;

(2) Indebtedness of Kimberly & Company to Landbank;

(3) Review of amount of punitive damages assessed against Marika Lody Runnells based upon any change in compensatory damages awarded;

(4) Value of 1983 Jaguar received by Lucille Runnells from Landbank and a review of punitive damages awarded;

(5) Factual findings upon which an award of punitive damages against Robert Runnells may be based; and

(6) Payment to John Runnells for sale of Lago Mar property and a review of punitive damages awarded.

As to all other issues raised on this appeal, the Order of the Bankruptcy Court is AFFIRMED.

IT IS SO ORDERED.